## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KA-00565-SCT

*JAMES LEE COLLINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/94 |
| TRIAL JUDGE: | HON. ANDREW CLEVELAND BAKER |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | ROBERT L. WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 1/30/97 |
| MOTION FOR REHEARING FILED: | 2/10/97 |
| MANDATE ISSUED: | 5/5/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. James Lee Collins was convicted in the Circuit Court of Tate County of capital rape and sentenced to life in prison. Collins appeals from the jury verdict and argues that as a matter of first impression before this Court that the trial court erred in not instructing the jury to consider "mistake of age" as a defense to capital rape nor did the trial court instruct the jury on the offense of statutory rape. Collins also raises a ***Batson*** claim and argues the trial court erred in accepting reasons articulated by the State. Collins further argues the trial court erred in accepting reasons articulated by the State in violation of ***J.E. B. v. Alabama***, 511 U.S. 127 (1994). We decline to recognize the mistake of age defense. We also hold that there is no error in the trial court's acceptance of the State's articulated reasons for striking certain jurors. Therefore, we affirm Collins' conviction and sentence.

### STATEMENT OF FACTS

¶2. On August 7, 1993, LaQuita Sessom received a telephone call from James Lee Collins. LaQuita testified that Collins requested that she meet him outside her house. Although LaQuita's mother had instructed LaQuita not to leave the house while her mother was at work, she agreed to meet Collins, whom she frequently saw while visiting her aunt, Linda Lewis. LaQuita was thirteen years of age.

¶3. LaQuita testified that Collins told her they would ride in his truck and talk. After riding for approximately one mile, Collins and LaQuita turned into a vacant lot beside the Springfield Church in Tate County. LaQuita testified that she struggled with Collins initially, however, after being forced back into Collins' truck, she was raped.

¶4. Collins was twenty-four years of age at the time of the incident. Collins admitted having sexual relations with LaQuita, however, he consistently maintained that the sexual activity was consensual and that LaQuita had told him that she was nineteen years old. LaQuita, however, testified that she told Collins during their first telephone conversation that she was thirteen years old.

¶5. Collins drove LaQuita home after the rape and called her later that night. LaQuita testified that Collins instructed her to drink vinegar to prevent pregnancy. Although Collins admits to telephoning LaQuita that night, he denied telling her to drink vinegar. Rather, Collins testified that LaQuita stated she was scared of getting pregnant, and that if she did become pregnant, she would tell her parents that Collins raped her.

¶6. On August 8, 1993, the day after the rape, LaQuita told her aunt, Linda Lewis, that she had been raped by Collins and then phoned her father to explain what had occurred. LaQuita's father, Blount Sessom testified he accompanied LaQuita to the Sheriff's Department to report the rape. LaQuita testified that she was scared to tell her mother because she would get into trouble for leaving the house while her mother was at work.

¶7. Following an investigation, formal charges were filed and Collins was indicted on October 23, 1993 for capital rape, pursuant to Miss. Code Ann. § 97-3-65(1). Collins rejected all plea negotiations and went to trial on May 4, 1995. Following voir dire, the State and defense exercised their respective peremptory challenges. The State used two of their peremptory challenges to strike Juror Number 24, Erma Elaine Wright, and Juror Number 87, Ruth Jackson. Collins raised a *Batson* challenge as both potential jurors were black females. The State articulated the following reasons for the challenges. As to Juror Wright, the State indicated that it was privy to information that Wright was formerly employed either with law enforcement or the Crime Lab but was terminated following an incident where Wright was accused of taking "dope" out of the crime laboratory. Assistant District Attorney Michael Horan stated to the Court that the District Attorney's office may have been involved in that matter, and that law enforcement was involved. Horan continued, "[b]ut for that bit of information, she certainly would have been chosen."

¶8. As for Juror Jackson, the State explained that Jackson lived in the community where this crime took place and that she was related to an individual currently being prosecuted by the District Attorney's office for two counts of murder. Moreover, Jackson did not reveal this information when asked during voir dire whether any family members had been prosecuted.

¶9. Collins also raised a gender-based challenge to the exclusion of Juror Smart. Smart revealed during voir dire that he had been sued by Defense Attorney Walker. However, Smart indicated to the court that he believed he could be fair and impartial in this case. Mr. Horan stated that Smart was excluded because he believed, in light of his experience, that "a person put in that position will go over and above to be fair to show that they're not prejudiced." The State indicated that no challenges were exercised against several other males and therefore Collins had failed to establish a pattern of

discrimination.

¶10. The trial court upheld the peremptory challenges and proceeded with trial where the jury returned a guilty verdict for the crime of capital rape. The defense proffered two instructions which would allow the jury to consider "mistake of age" as a defense. After entertaining argument by the State and the defense, the trial court refused the instructions. On June 6, 1995, post-trial motions were denied and Collins was sentenced to life in prison. Collins now appeals his conviction to this Court.

## DISCUSSION OF LAW

### I. WHETHER THE TRIAL COURT ERRED IN DENYING PROPOSED JURY INSTRUCTIONS.

¶11. Collins argues that the trial court erred in not instructing the jury on the "mistake of age" defense. Specifically, Collins assigns as error the trial court's failure to give the following instructions to the jury:

Instruction D-4

The Court instructs the jury that if you find from the evidence that James Collins engaged in sexual intercourse with Laquita Sesson (sic) who advised him that she was greater than eighteen (18) years of age, then you shall find James Collins not guilty of seduction of a child under age eighteen.

Instruction D-5

The Court instructs the jury that if you find from the evidence presented in court that James Collins engaged in or committed capital rape upon Laquita Sesson (sic) who advised him that she was greater than eighteen (18) years of age, then you shall find James Collins not guilty of capital rape of Laquita Sesson (sic).

¶12. This Court's standard of review in reviewing jury instructions is as follows:

In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. (citations omitted).

*Hickombotton v. State*, 409 So.2d 1337, 1339 (Miss.1982). In the case at bar, the jury was substantively instructed as to the offenses of capital rape, Miss. Code Ann. § 97-3-65(1) and seduction of a child under age eighteen, Miss. Code Ann. § 97-5-21. Collins was convicted of capital rape.

¶13. Our task is therefore to determine whether the instructions, when read as a whole, accurately set forth the applicable law. While Collins does not object to the instructions actually given by the court, his complaint lies with the refusal of the trial court to instruct the jury as to the "mistake of age" defense. Collins argues that this defense is a modern trend recognized by at least seventeen states as

well as a view adopted by the Model Penal Code, §§ 213.1, 213.6(1). Collins admits that those states which recognize this defense do so pursuant to the crime of statutory rape. However, Collins argues that this Court should recognize mistake of age as a defense to both statutory and capital rape.

¶14. This is an issue of first impression before this Court. Further complicating the issue is the sparse legislative intent to supplement the relevant statutory provisions, §§ 97-3-65, 97-3-67, 97-5-21. However, prior decisions by this Court, case law from sister states and legal commentary aid in our analysis.

¶15. A review of both the capital and statutory rape statutes reveals that age is a critical element of each crime. "Crimes such as statutory rape and sexual assault, in the instant case are defined by the ages of the persons involved." *Washington v. State*, 645 So.2d 915, 919 (Miss.1994). "The age of the victim makes or breaks the conviction." *Id.* This Court recently held that the age of the accused was "a *sine qua non* of the crime of capital rape requiring proof by the state at trial." *Fisher v. State*, 1996 WL 502125 (Miss.1996).

¶16. The difference between statutory and capital rape in Mississippi is first one of age. Capital rape requires rape of a child under age fourteen. If the perpetrator is over the age of eighteen, a sentence of death or life imprisonment may be imposed. However, if the perpetrator is between the ages of thirteen and eighteen years, the court in its discretion may determine an appropriate sentence. However, statutory rape requires carnal knowledge of an unmarried person of previously chaste character younger than himself or herself and over fourteen and under eighteen years of age.

¶17. Thus, while age serves as a line of demarcation for purposes of the potential penalty for capital rape, age is the defining characteristic of statutory rape, be it forcible or not. See *Lewis v. State*, 184 So. 53, 183 Miss. 192 (1938). The legislative intent of § 97-3-67 is contained in General Laws of Mississippi, 1914, ch. 171, House Bill No. 76 wherein the legislature stated "An Act to fix the age of consent at eighteen years." The clear intent underlying the crime of statutory rape is that females under age eighteen are legally unable to consent to sexual relations with another. Intent or mistake as to the age of the child are irrelevant.

¶18. Historically, there have been two basic rationales for statutory rape laws. The first rationale is the need for strict accountability to protect young girls. The second rationale is the premise that the defendant's intent to commit statutory rape can be derived from his intent to commit the morally or legally wrongful act of fornication. 6 Am. Jur. 2d Proof of Facts § 2 (1975). Further, "the history of the offense of statutory rape indicates that from ancient times the law has afforded special protection to those deemed too young to understand their actions." *United States v. Ransom*, 942 F.2d 775, 776 (10th Cir. 1991). The weight of authority in this country indicates that statutory rape has traditionally been viewed as a strict liability offense. *Id.* (citing 8 A.L.R. 3d 1100 and 1 Wharton's Crim. Law & Proc. § 321.)

¶19. Despite the fact that statutory rape is historically a strict liability offense, "mistake of age" has been asserted successfully as a defense in several states [1] and is recognized by the Model Penal Code when the child is over the age of ten years. The basic premise of this defense is that a reasonable or good faith mistake as to the age of the victim is a valid defense to statutory rape.

¶20. However, this defense remains the minority view. Far more states have rejected the defense. *See*

*Nelson v. Moriarty*, 484 F.2d 1034 (1st Cir. 1973); *U.S. v. Random*, 942 F.2d 775 (10th Cir.1991), *cert. denied* 116 L.Ed.2d 799, 112 S.C.. 897; *People v. Green*, 514 P.2d 769 (Colo.1973); *State v. Plude*, 621 A.2d 1342 (Conn.1993); *State v. Sorakrai*, 543 So.2d 294 (Fla.1989); *Tant v. State*, 281 S.E. 2d 357 (Ga.1981); *State v. Silva*, 491 P.2d 1216 (Haw.1971); *State v. Stiffler*, 788 P.2d 220 (Idaho 1990); *Toliver v. State*, 372 N.E.2d 452 (Ind.1978); *State v. Tague*, 310 N.W. 2d (Iowa 1981); *Garnett v. State*, 632 A.2d 797 (Md.1993); *Commonwealth v. Moore*, 269 N.E.2d 636 (Mass.1971); *State v. Stokely*, 842 S.W.2d 77 (Mo.1992); *State v. Campbell*, 473 N.W.2d 420 (Neb.1991); *Jenkins v. State*, 877 P.2d 1063 (Nev.1994); *State v. Davis*, 229 A.2d 842 (N.H.1967) *rev'd on other grounds*, 612 A.2d 923 (N.H.1992) ; *State v. Moore*, 253 A.2d 579 (N.J. 1969); *Guinyard v. State*, 195 S.E.2d 392 (S.C.1973 ); *State v. Fulks*, 160 N.W.2d 418 (S.D.1968); *State v. Randolph*, 528 P.2d 1008 (Wash.1974); *Kelley v. State*, 187 N.W. 2d 810 (Wis.1971).

¶21. The "mistake of age" defense could hardly co-exist with our statutory rape statute which is intended to set forth the "age of consent." As a result, children below this age are legally incapable of consenting to sexual relations. There is simply no indication by our legislature or by this Court that the defendant's knowledge the child's age is a factor to be considered. Rather, the knowledge or ignorance of the age of the child is irrelevant. If reasonable mistake were recognized as a defense, the very purpose of the statute would be frustrated and the deterrent effect considerably diminished.

¶22. However, Collins asks that this Court recognize "mistake of age" as a defense to capital rape [2] as well. This Court has held that capital rape does not require that the act be "forcefully done against the will of the child." *McBride v. State*, 492 So.2d 581, 584 (Miss.1986). Rather, we stated, "[t]he child was under the age of consent, and it was not material whether the rape was accomplished by force or violence and against the will of the child." *Id.* Consent is no defense to the charge. *Id.* (citations omitted).

¶23. Thus, the capital rape statute appears to have the same purpose as does statutory rape; the protection of children of a specified age. In capital rape that age is *under* fourteen years whereas statutory rape applies to those children who are between the ages of fourteen and eighteen. At the heart of these statutes is the core concern that children should not be exploited for sexual purposes regardless of their "consent". They simply cannot appreciate the significance or the consequences of their actions.

¶24. Moreover, the capital rape statute is available for those cases which involve forcible rape of children under age fourteen. In a forcible rape case involving a child under the age of fourteen the "mistake of age" defense is even less appropriate. In the case at bar, LaQuita's testimony was unequivocal: Collins forcibly raped her. If we take the victim's story as true, as the jury did, then this is not merely a case of consensual sex with one partner falling below a prohibited age, but rather the forcible rape of a child.

¶25. Recognizing the defense of "mistake of age" would at best frustrate the purpose of both legislative enactments. However, Collins argues that we imply such a defense because it is not expressly excluded by the legislature. Although not expressly excluded by the legislature, the intent underlying these statutes is clear.

¶26. Those states which recognize the defendant's mistake as a defense do so in large part because criminal offenses require the critical element of mens rea or criminal intent. The defendant's mistake is

allowed as a defense to negate this element of the crime. The United States Supreme Court has addressed the issue of criminal intent and has recognized that the legislature's authority to define an offense includes the power "to exclude elements of knowledge and diligence from its definition." *Lambert v. California*, 355 U.S. 225, 228 (1957). The Court expressly recognized that "sex offenses, such as rape, in which the victim's actual age was determinative despite the defendant's reasonable belief that the girl had reached the age of consent are exceptions to the general rule that criminal statutes require the State to establish intent." *Morrissette v. United States*, 342 U.S. 246, 251 n.8 (1942) .

¶27. Moreover, overlooked by Collins is that those states which do recognize this defense require the defendant to prove that his belief was "reasonable" or in "good faith." Collins' proposed instructions do not require that he reasonably believed or that he possessed a "good faith" belief that LaQuita was over the age of fourteen years. Rather, the instructions proposed by Collins focus on LaQuita's actions rather than Collins' state of mind. For example, Instruction D-4 states "if you find from the evidence. . . with Laquita Sesson (sic) **who advised him**. . . then you shall find James Collins not guilty of seduction of a child under age eighteen." (emphasis added). Instruction D-5 likewise contains the language "who advised him." Thus, the jury would have been instructed that they could find Collins not guilty of either seduction or capital rape if they merely found that LaQuita advised Collins that she was greater than (18) years of age. The jury would not have been required to find that Collins reasonably or in good faith believed LaQuita's statements. The State correctly suggests that if such instructions were allowed, "an adult could have sex with a child of any age and could not be found guilty of capital rape if the child lied about her age, no matter how unbelievable that may be." Therefore, the proposed instructions, were an inaccurate statement of this defense. A trial court cannot be put in error for refusing to give an instruction that misstates the law. *Allman v. State*, 571 So. 2d 244, 251 (Miss.1990).

¶28. Moreover, "[o]ur law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such." *Fairchild v. State*, 459 So.2d 793, 800 (Miss.1984). The evidentiary basis for such an instruction in the case at bar is at best tenuous. Collins repeatedly claims that LaQuita told him and that he believed she was nineteen years of age. Despite Collins' testimony there is no other confirmation that LaQuita represented herself as such. Moreover, additional evidence presented at trial undermines the reasonableness of his belief. For example, numerous witnesses testified that Collins had known LaQuita and her mother or had at least seen them at Linda Lewis' home since LaQuita was a baby. Moreover, it was further shown that Collins lived less than a mile from LaQuita and her mother for the last four or five years. LaQuita was thirteen years old at the time of the rape and would have been between the ages of eight and nine when she first began living in Tate county and when she first met Collins. To now believe that Collins reasonably believed LaQuita was nineteen years of age is at best doubtful.

¶29. Collins also argues that the trial court erred in failing to instruct the jury on the lesser included offense of statutory rape. Collins argues that in light of his "mistake of age" defense, a statutory rape instruction was warranted. Collins' analysis suggests that while a "hypothetical, reasonable jury might not believe that Collins thought LaQuita was nineteen, a reasonable jury could believe Collins thought LaQuita Sessum was older than thirteen years of age."

¶30. The criteria for determining whether an offense is a lesser-included offense of a greater offense

is as follows: ". . . the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser included offense." *Hailey v. State*, 537 So. 2d 411, 415 (Miss.1988)(citations omitted). Applying this test to capital and statutory rape does not lead to the conclusion that statutory rape is a lesser included offense of capital rape. Capital rape requires carnal knowledge by one eighteen (18) years of age or older of a child **under the age of fourteen (14) years**. § 97-3-65, Miss. Code Ann. (1972 as amended). Thus, a necessary element of capital rape is that the victim be under the age of fourteen years. However, the crime of statutory rape requires that the child be **over fourteen** but under eighteen years of age. Therefore, when one commits capital rape one does not necessarily commit the crime of statutory rape due to the requisite age of the victim.

¶31. "The cases are legion in this Court holding that lesser-included offense instructions must be warranted by the evidence." *Monroe v. State*, 515 So.2d 860, 863 (Miss.1987). (citations omitted). In the case *sub judice,* the evidence was uncontradicted and clear: LaQuita Sessom was thirteen years of age at the time of the crime. LaQuita and her mother, testified that LaQuita was born on March 21, 1980. On or about August 7, 1993, LaQuita would have been thirteen years of age. The evidence presented at trial simply did not warrant a statutory rape instruction. "[O]nly where the evidence could *only* justify a conviction of the principal charge should a lesser included offense instruction be refused." *Fairchild v. State*, 459 So. 2d 793, 800 (Miss.1984)(*quoting Ruffin v. State*, 444 So. 2d 839, 840 (Miss.1984)). Here, the evidence could only justify a conviction of capital rape or possibly seduction of a child under the age of eighteen. The trial court properly refused the statutory rape instruction.

¶32. Collins' argument that the statutory rape instruction should have been given was conditioned upon this Court upholding the "mistake of age" defense. At the time of trial, the lower court had before it the law as it existed at that time. We have repeatedly held that lesser-included instructions "should not be granted indiscriminately, nor on the basis of pure speculation." *Doss v. State*, 1996 WL 272348 (Miss.1996); *McGowan v. State*, 541 So. 2d 1027, 1028 (Miss.1989); *Mease v. State*, 539 So. 2d 1324, 1329 (Miss.1989). To have granted such an instruction based upon the assumption that this Court may recognize this defense would have been "pure speculation."

## II. WHETHER THE TRIAL COURT ERRED IN DENYING COLLINS' *BATSON* OBJECTION.

¶33. Collins next argues that the State used its peremptory challenges in an unconstitutional manner to exclude prospective black jurors from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.C.. 1712, 90 L.Ed.2d 69 (1986). Specifically, Collins complains that the explanations given by the State were not race-neutral and were effectively rebutted by Collins.

¶34. "Under *Batson*, a defendant must show that (1) he is a member of a cognizable racial group; (2) that the prosecutor exercised peremptory challenges to excuse a venire person of the defendant's race; and (3) that there is an inference that the venire persons were excluded on account of their race." *Mack v. State*, 650 So.2d 1289, 1296 (Miss.1994)(*quoting Batson*, 476 U.S. 79, 96)). "In sum, these components constitute the prima facie showing of discrimination necessary to compel the state to come forward with a neutral explanation for challenging black jurors." *Lockett v. State*, 517 So.2d 1346, 1349 (Miss.1987)(*quoting Batson*, 476 U.S. at 97)). The burden then shifts to the State

to come forward with a race-neutral explanation for challenging the jurors. ***Ibid.*** (*quoting **Batson***, 476 U.S. at 96)). However, the State's explanation is not required to rise to the level of justification as required for a challenge for cause. ***Harper v. State***, 635 So. 2d 864, 867 (Miss.1994); ***Benson v. State***, 551 So. 2d 188, 192 (Miss.1989); ***Wheeler v. State***, 536 So. 2d 1347, 1351 (Miss.1988).

¶35. The record reflects that Collins objected to the peremptory challenges exercised against prospective juror number 24, Ms. Erma Wright and number 87, Ms. Ruth Jackson. During this objection, defense counsel conceded that the State accepted two black jurors, but noted that all other prospective jurors are white. Although the trial court did not expressly find that a prima facie case of discrimination had been made, it then proceeded into the full-fledged analysis and thus required the State to proffer its reasons for the peremptory strikes.[(3)]

¶36. The "pivotal inquiry then is whether the State was able to present a race-neutral explanation for each of the peremptory strikes." ***Griffin v. State***, 607 So. 2d 1197, 1202 (Miss.1992). Determining whether there lies a racially discriminatory motive under the State's articulated reasons is left to the sole discretion of the trial judge. ***Lockett v. State***, 517 So. 2d 1346, 1350 (Miss.1987). Moreover, "a trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear to be clearly erroneous or against the overwhelming weight of the evidence." ***Id.*** at 1350.

¶37. With regard to Juror Wright, the State indicated that "she had worked either with law enforcement or at the Crime Lab, I'm not sure, but she's been accused of borrowing some dope out of the Crime Laboratory and was excused from employment related thereto." After being questioned by the Court, the State indicated that "law enforcement tells me that she was released because of that." The State also indicated that because Ms. Wright was a black female "she would be ideal in this case to serve as a juror."

¶38. At best "borrowing dope" is grounds for termination from employment, at worst it is criminal activity. Despite the characterization, the State was privy to information that this juror had been terminated because she "borrow[ed] dope" from her employer. This information was received by the State from law enforcement, and the State acknowledged that it was unsure whether or not the district attorney's office was involved in that matter.

¶39. This Court was faced with a similar situation in ***Johnson v. State***, 529 So.2d 577 (Miss.1988). There, we held, "[t]he State's information from law enforcement as to the possibility of Street's involvement in criminal activity is not in the record, but again, it does not have to be." ***Johnson*** at 584 (*citing **Lockett,*** 517 So. 2d at 1352-53).[(4)] This Court concluded that possible criminal activity was a race-neutral explanation. In light of ***Johnson***, we also find the State's reasons for excluding Juror Wright were race-neutral.

¶40. The State exercised its second peremptory challenge to strike Jackson. Following a ***Batson*** objection, the State gave two bases for excluding Jackson. First, the State indicated that Jackson lived in the neighborhood where this incident took place. Second, the State indicated that Jackson had not been entirely truthful during voir dire when jurors were asked whether any of their family members had been prosecuted by the District Attorney's office. The State possessed information that Jackson was a relative of an individual currently under indictment for two counts of murder and being prosecuted by the same District Attorney's office.

¶41. In *Griffin v. State*, 607 So. 2d 1197, 1203 (Miss.1992), this Court held that striking minority jurors whose family members had been convicted of crimes was race-neutral. Moreover, in *Benson v. State*, 551 So.2d 188 (Miss.1989) this Court upheld the prosecutor's explanation that jurors were struck because the prosecutor believed that one prospective juror was related to someone who had been tried for a felony by the District Attorney's office. We again hold that the prosecutor's explanation in the case *sub judice* was race-neutral and therefore withstands *Batson* scrutiny.

¶42. Collins, however, insists that he effectively rebutted the explanations provided by the prosecutor. However, the record only reveals rebuttal by defense counsel as to Ms. Jackson. Defense counsel rebutted by stating "my rebuttal on that would be, number one, Ms. Jackson did not respond and, therefore, responded negatively when Mr. Horan asked, Have you or any member of your family been prosecuted; and number two, he asked the question or the Court asked the question, Has anyone heard anything about this case, and no one responded."

¶43. The trial court was faced with information which indicated that Jackson failed to respond when she should have. Moreover, the challenge as to Jackson could have risen to the level of a challenge for cause although it is not required to do so. "A juror is disqualified within Miss. Code Ann. § 13-5-67 (Supp.1994) where on voir dire examination he or she has withheld information or misrepresented material facts." *Mack v. State*, 650 So.2d 1289, 1300 (Miss.1994)(*citing McNeal v. State*, 617 So.2d 999, 1003 (Miss.1993)). In *Mack*, this Court upheld the State's challenge for cause where the juror failed to reveal during voir dire that her husband had been tried and acquitted during the same term of court and another indictment was pending. *See also Lockett v. State*, 517 So. 2d 1346, 1351 (Miss.1987)(juror whose brother was convicted of armed robbery can easily be seen as being potentially prejudiced against the prosecution).

¶44. Furthermore, Jackson lived in the same community as both the defendant and the victim. This Court has recognized that living near the defendant was a sufficient race-neutral reason. *Johnson v. State*, 529 So.2d 577, 584 (Miss.1988).

¶45. A thorough review of the record reveals that the trial court was not clearly erroneous in finding that the explanations given by the State were race-neutral, nor was this finding against the overwhelming weight of the evidence. Therefore, we hold that the trial court properly overruled the *Batson* objection raised by Collins.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING COLLINS' GENDER-BASED OBJECTION TO PEREMPTORY CHALLENGES BY THE STATE.

¶46. In *Duplantis v. State*, 644 So. 2d 1235 (Miss.1994), this Court addressed the decision of the United States Supreme Court in *J.E.B. v. Alabama*, 511 U.S. 127 (1994). This decision extended *Batson* to gender-based exclusion of jurors. In *J.E.B.* the Court held:

> . . . the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man. As with race, the core guarantee of equal protection, ensuring citizens that their State will not discriminate. . ., would be meaningless were we to approve the exclusion of jurors on the basis of such

assumptions which arise solely from the jurors [gender].

*J.E.B. v. Alabama*, 511 U.S. at 146 (1994)(*quoting* **Batson**, 476 U.S. at 97-98)). **J.E.B.**, like **Batson**, requires one challenging a peremptory strike to make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. 511 U.S. at 144-145. Again, the reason is not required to rise to the level of a challenge for cause, rather it merely must be based on a juror characteristic other than gender and the proffered explanation may not be pretextual." **Id.**

¶47. Collins objects to the State's challenge of juror Joey Smart, a white male. During voir dire, Smart indicated that he had been sued by defense counsel. Defense counsel, after objecting to the State's challenge of Smart, argued that Mr. Horan, the Assistant District Attorney, utilized a pattern of excluding males from juries. Transcripts of prior cases in which Mr. Horan was the Assistant District Attorney were introduced and considered by the court. The Court then allowed the State to give its reasons for challenging Smart. The prosecutor indicated that Smart stated during voir dire that he had been sued by Mr. Walker. However, Smart stated that he could be fair. The prosecutor responded "I struck him because Mr. Walker has sued him." The State then clarified for the record that Jurors No. 1, 5, 25, 35, 110, 120 were males and were not challenged by the State. The jury ultimately contained six male jurors.

¶48. The prior relationship between defense counsel and Smart is sufficient to withstand a gender-based challenge. Here, the potential juror knew and had been sued by defense counsel. In *Griffin v. State*, 607 So.2d 1197 (Miss.1992), this Court held that the fact that the juror knew defense counsel was a race-neutral reason for the peremptory challenge.

¶49. The State articulated gender-neutral reasons for the challenge. The fact that Smart had been involved in prior litigation with the defense attorney is simply not related to his gender.

## CONCLUSION

¶50. In light of the legislative intent which underlies Mississippi's statutory and capital rape statutes, it would be contradictory to recognize "mistake of age" as a defense. We therefore decline to recognize this defense. As a result, the trial court properly refused to so instruct the jury. Moreover, the trial court correctly refused to instruct the jury on the offense of statutory rape. In addition, the trial court did not err in accepting the reasons articulated by the State in support of the exercise of peremptory strikes.

**¶51. CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. Alaska, Arizona, California, Kentucky, Illinois, Maine, Minnesota, New Mexico, Ohio, Pennsylvania, Utah, Washington, West Virginia, Wyoming.

2. Miss. Code Ann. § 97-3-65(1) sets forth the offense of capital rape as follows:

(1) Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child under the age of fourteen (14) years, upon conviction, shall be sentenced to death or imprisonment for life in the State Penitentiary; provided, however, any person thirteen (13) years of age or over but under eighteen (18) years of age convicted of such crime shall be sentenced to such term of imprisonment as the court, in its discretion, may determine. In all cases where the child is under the age of fourteen (14) years it shall not be necessary to prove penetration of the child's private parts where it is shown the private parts of the child have been lacerated or torn in the attempt to have carnal knowledge of the child.

3. The United States Supreme Court has held that "once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359 (1991) *(citing **United States Postal Serv. Bd. of Governors v. Aikens**, 460 U.S. 711, 715 (1983)).*

4. In *Lockett v. State*, 517 So. 2d 1346, 1352 (Miss.1987), this Court "declined to set any limits on the prosecutor's use of any legitimate informational source heretofore or hereafter available as to jurors."