# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00521-SCT

*ARMON ANDRE RANDALL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/96 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES L. DAVIS, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/11/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/2/98 |

## BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.

## WALLER, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Armon Andre Randall was convicted of capital murder and armed robbery. Randall received a sentence of life without parole for capital murder and forty years for the armed robbery charge. On appeal to this Court, Randall argues that the court below improperly prevented him from exercising a peremptory challenge on juror Allen Perkins; and, that it was error for the lower court to refuse a requested lesser included offense instruction on manslaughter. Finding no merit in either argument, we affirm.

### FACTS AND PROCEDURAL HISTORY.

¶2. Mr. Tim Bui and his wife, Kim Che Le, owned and operated Tim's Auto Service in Biloxi. On May 12, 1994, they both closed up shop and left for their home around 7:15 p.m. Unbeknownst to the couple, they were followed by a car carrying Armon Randall and his confederates, Chris Payne, Rose Mary Henderson, and Jamie Sue Skinner.

¶3. Earlier, Randall and Payne had discussed performing a robbery as a means of earning some quick cash. Each was armed, Armon Randall with a .32 revolver, and Chris Payne with a .380 auto. Although well armed, the two needed a car. So, the two fell in with Skinner and Henderson and left in Henderson's blue Camaro. The four drove around for awhile and then noticed the victims either closing down their shop or stopping at a stoplight.

¶4. They followed the victims back to Gulfport. Payne and Randall got out of the car and made a bungling attempt to rob the couple, while Jones and Skinner made the block. Payne struck Mr. Bui in the head with his pistol; but, Randall panicked when he saw Mrs. Le move around in her seat and shot her in the neck. Payne and Randall then fled the scene on foot, making away with a bag of cucumbers. Mrs. Le bled to death in her driveway.

¶5. The police initially had no leads in this case, but as circumstance would have it, Payne had allegedly committed a prior armed robbery in the company of one Chris Henderson. Chris Henderson, picked up in relation to this other crime, related that he had overheard Chris Payne and Armon Randall discussing "doing" an armed robbery. The investigating officer contacted Detective Guinn, assigned to the instant case, who, based on his interview with Chris Henderson, obtained a search warrant for Chris Payne's house. The police recovered numerous weapons, including a .380 automatic, and Chris Payne was subsequently arrested.

¶6. At the station, Chris Payne gave a statement resulting in arrest warrants being issued for himself, Armon Randall, Jamie Sue Skinner, and Rose Mary Henderson. Armon Randall was arrested and the grand jury subsequently returned an indictment against Randall for capital murder and armed robbery. Armon's trial spanned three days and ultimately the jury returned guilty verdicts on both counts, sentencing Armon Randall to prison for life without parole for the capital murder of Kim Che Le, and 40 years for the armed robbery of Tim Bui.

¶7. From this conviction, Armon Randall filed timely notice of appeal, raising the following issues for this Court's consideration:

> **I. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING THE DEFENDANT TO USE HIS PEREMPTORY CHALLENGE ON JUROR ALLEN PERKINS.**
>
> **II. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING A LESSER INCLUDED OFFENSE INSTRUCTION.**

**DISCUSSION**

> **I. DID THE LOWER COURT ERR IN PREVENTING RANDALL FROM EXERCISING A PEREMPTORY CHALLENGE AGAINST JUROR ALLEN PERKINS?**

¶8. The availability of peremptory challenges is not a matter of constitutional right; but, it is well established that the exercise of such challenges, when made available, must be constitutional. The wellspring of current jurisprudence on this question is *Batson v. Kentucky* in which the Supreme Court held that a juror may not be struck by the prosecution in a criminal case simply because she is black. *Batson v. Kentucky,* 476 U.S. 79 (1986). *Batson* protection has since been extended to civil

trials, to strikes exercised by the defense, and to discriminatory strikes based on gender. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631, (1991) (*Batson* extended to civil context); *Georgia v. McCollum*, 505 U.S. 42, 59, (1992) (extending *Batson* to strikes exercised by criminal defendant); *J.E.B. v. Alabama*, 511 U.S. 127, 141(1994)(applying *Batson* to gender).

¶9. The Supreme Court recently outlined the *Batson* test in *Hernandez v. New York* as follows[1]:

> First, the [opponent of the strike] must make a prima facie showing that the [proponent] has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the [proponent] to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the [opponent] has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358-59 (1991)(Plurality opinion)(citations omitted). The *Batson* test has spawned an enormous amount of legal commentary and judicial opinion, and thus it is helpful to consider each prong separately.

## A. The Prima Facie Case

¶10. Traditionally a *prima facie* showing of discrimination required that the opponent of the strike show,

> 1. That he is a member of a "cognizable racial group";
>
> 2. That the proponent has exercised peremptory challenges toward the elimination of veniremen of his race; and
>
> 3. That facts and circumstances raised an inference that the proponent used his peremptory challenges for the purpose of striking minorities.

*Batson*, 476 U.S. at 96. (*citing Castaneda v. Partida*, 430 U.S. 482, 494 (1977)).

¶11. This test, however, has been modified somewhat by the Supreme Court's decision in *Powers v. Ohio*, 499 U.S. 400 (1991). In that case the Supreme Court held that Powers, a white, had standing to challenge the exclusion of black jurors on the grounds that the equal protection right of the juror to serve was protected by *Batson*. *Powers*, 499 U.S. at 406. Essentially, this means that step three above becomes the pivotal inquiry to determine a *prima facie* case, as this Court recognized in *Davis v. State*, 660 So. 2d 1228, 1240 (Miss. 1995), *cert. denied,* 116 S.Ct. 1684 (1996). Specifically, the pivotal question is whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words "the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94.

¶12. This Court has examined the number of strikes on a particular class, the ultimate ethnic or gender makeup of the jury, the nature of questions asked during the voir dire, and the overall demeanor of the attorney. *See Coleman v. State*, 697 So. 2d 777, 786 (Miss. 1997); *Davis*, 660 So. 2d at 1263 (Banks, J., concurring); *Mack v. State*, 650 So. 2d 1289, 1299 (Miss. 1994), *cert. denied,* 116 S.Ct. 214 (1995). Additionally, "[t]he [opponent of the strike] may also rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are

of a mind to discriminate." *Batson*, 476 U.S. at 80, 106 S.Ct. at 1714; *Simon v. State*, 688 So. 2d 791, 808 (Miss.), *cert. denied,* 117 S.Ct. 2524 (1997); *Harper v. State*, 635 So. 2d 864, 868 (Miss. 1994).

¶13. Obviously, such a fact intensive inquiry gives rise to a highly deferential standard of review, as both this Court and the Supreme Court have recognized. *Batson*, 476 U.S. at 98 n.21, *Collins v. State*, 691 So. 2d 918, 926 (Miss.), reh'g denied 693 So. 2d 384, *cert. denied*, 118 S.Ct. 198,(1997); *Davis*, 660 So. 2d at 1242.

¶14. Turning to the facts of the instant case it is clear that the state satisfies step one of *Batson*. The State noted after strike D-3 the pattern of striking males from the jury, and the learned trial judge appropriately examined the record for a pattern of strikes and made the determination that a *prima facie* case of gender discrimination had been established:

> **MR. MARTIN**: The State would make a general objection, Your Honor, to the defense strikes, to the pattern of strikes on the white males.

> **THE COURT**: I'm looking back here to see which ones have been accepted.

> **MR. DAVIS**: I'll go ahead, Judge. I've accepted some white males.

> **THE COURT**: Well, I don't see any.

> **MR. DAVIS**: Peter Sheely.

> **THE COURT**: You did accept Mr. Sheely. All right. With a word of caution, the next white male that is struck I will require you to give a race neutral -- not a race neutral, but a gender neutral reason, okay.

> What do you say as to Sandra Ladner, State?

> **MR. MARTIN**: Accept.

> **THE COURT**: I take it that gender neutral reasons fall into the same category, there must be an established pattern. One has been accepted.

> Defense, what do you say as to William Coleman?

> **MR. DAVIS**: That would be D-4.

> **THE COURT**: Okay. Give me a gender neutral reason then.

¶15. In light of the deference accorded factual findings, it is clear that the judge acted well within his discretion in determining that a *prima facie* case of discrimination existed.

### B. Gender Neutral Explanations

¶16. Step two of the *Batson* test requires that the proponent of the strike provide race or gender neutral reasons for the strike. *Batson*, 476 U.S. at 97. The Supreme Court has made clear that for the purposes of step two of *Batson*, *any* reason which is not facially violative of equal protection will

suffice:

> The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

> The Court of Appeals erred by combining Batson's second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, i.e., a "plausible" basis for believing that "the person's ability to perform his or her duties as a juror" will be affected. It is not until the third step that the persuasiveness of the justification becomes relevant--the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.

*Purkett v. Elem*, 514 U.S. 765, 767-68, (1995) (brackets in the original) (citations omitted).

¶17. Examining the instant case, it is clear that Randall gave sufficiently race neutral reasons for striking juror Allen Perkins for the purposes of *Batson* step two. Specifically, Randall averred several reasons for the strike:

> **MR. DAVIS**: He remembers the case from TV on when it happened.

> **THE COURT**: When it happened?

> * * * *

> **MR. DAVIS**: He's also retired, and he's 52-years old, Judge. And on his card he could barely write real well when he filled out his card.

¶18. Under *Purkett*, none of these reasons are facially violative of equal protection, and thus they pass *Batson* step two. A facially neutral reason at step two however, is not always a non-pre-textual one for step three.

¶19. As *Purkett* makes clear, simply passing step two is perhaps the easiest burden in the entire *Batson* test, as Randall's counsel noted when he stated that his reasons could be "fanciful". The difficult question, however, is not whether the proponent of the strike can present a reason which is not *facially* racist or sexist, but whether the proffered reason will ultimately prove to be pre-textual.

### C. Pretext

¶20. The last prong of *Batson* requires the trial court to determine if the opponent of the strike has carried his overall burden of proving purposeful discrimination. In large part such a determination often rests on whether the proponent of the strike's proffered race or gender neutral reasons are pre-textual. At this stage, silly or fanciful reasons given at stage two will be examined; and, as the Supreme Court stated in *Purkett*, "[a]t [this] stage, implausible or fantastic justifications [given at step two] may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, 514 U.S. at 768.

¶21. Determination of pretext at stage three hinges on a host of case specific factual findings which

are similar to those employed at step one: the extent and nature of voir dire on the grounds upon which the strike is being exercised;[2] the relation between the reasons for the strike and the facts of the case;[3] the demeanor of the attorney and the prospective juror;[4] and, disparate impact upon a minority or gender class.[5]

¶22. Additionally, this Court has recognized that the relative strength of the *prima facie* case of purposeful discrimination established at step one will often directly color the inquiry into whether any given reason is mere pretext, "The stronger the *prima facie* case, the more cogent the explanations from the state and supporting evidence must be and vice versa." *Mack*, 650 So. 2d at 1298.

¶23. Just as in step one, these fall squarely within the bailiwick and expertise of the trial court judge, who will not be reversed except upon a showing of clear error. *Batson*, 476 U.S. at 98 n.21; *Collins*, 691 So. 2d at 926; *Davis*, 660 So. 2d at 1242.

¶24. Turning to the record in the instant case, it is clear that the trial judge did not disqualify Randall on the grounds that his proffered reason was not facially neutral, but rather denied the strike on the grounds that the evidence as a whole demonstrated the pre-textual nature of Randall's offered reasons.

> **THE COURT**: As has been pointed out by the State, this has been repeatedly given as the same reasons. Once again, this is a subjective matter for the Court to pass on. I think Mr. Perkins -- your strike will be declined. You have Mr. Perkins as juror number 12. You want to take exceptions to that?

> **MR. DAVIS**: Judge, I guess we just have to because we have our peremptory challenges and we have a right to use them. Also, the United States Supreme Court said in connection with Batson challenges, and these are reverse Batsons, that our reasons for striking can even be fanciful or silly. Our reasons for striking these people can -- our U.S. Supreme Court did, in fact backing up prosecutors, Batson strikes, that their reasons, like I say, can even be silly as acceptable.

¶25. Randall had given the age of the prospective juror as a reason previously, and had also seated a female juror, Renee Rose, who had also seen pre-trial publicity. Furthermore, Randall had to this point, exercised 9 of 10 peremptory strikes against males. Ultimately, the seated jury was composed of 9 women and 3 men. Additionally, Randall's contention that Allen Perkins' penmanship was bad would be a reason totally unrelated to the facts of the particular case. In other words, the trial court judge had and examined ample evidence to support his finding that Randall's reasons for striking Allen Perkins were pre-textual.

¶26. Notwithstanding that Randall's proffered reasons could, under *Purkett*, be highly redundant or even silly, the judge was well within his discretion to determine that the reasons were pre-textual at step three.

¶27. Randall, however, contends that the trial judge simply rejected his gender neutral explanation at step two, without inquiring as to whether the State had met its overall burden at step three. This is an exceedingly fine hair to split.

¶28. It is of philosophical interest only to debate at which point the trial judge quit accepting the proffered reason for step two purposes and started rejecting it for step three purposes. But in this Court's opinion, it is at least clear that the court below considered both the nature of the *prima facie* case of discrimination and the relative weight of the proffered explanation in light of the circumstances of the case and then determined that it was pretextual.

¶29. This is not a case as in ***Purkett*** where the trial judge simply rejected the proffered explanation as illogical on its face, rather he accepted it, and then evaluated it in light of the relevant circumstances of the case and in accordance with step three of ***Batson***. Thus, Randall's contention that he was erroneously denied a peremptory strike against juror Allen Perkins is without merit.

## II. DID THE TRIAL COURT ERR IN REFUSING A LESSER INCLUDED MANSLAUGHTER INSTRUCTION?

¶**30.** In his second assignment of error, Randall contends that the trial court erred in refusing to grant one or more lesser included offense instructions that he offered. Randall offered the following proposed instructions, all of which were denied. Proposed instruction DG-9 was a simple murder instruction; DG-10 was a manslaughter instruction; DG-11 included both simple murder and manslaughter; DG-12 was an armed robbery instruction; DG-13 was a combined murder, manslaughter instruction; and, DG-14 was a manslaughter instruction.

¶31. Randall's contention regarding these instructions is threefold. First, he argues that the evidence before the lower court of the robbery was weak, and that, therefore, the jury could have disbelieved the robbery element, reducing the capital charge to simple murder or manslaughter. Second, Randall contends that the evidence of who actually shot Kim Che Le was weak, and the jury could have believed that Chris Payne did the shooting, making Randall an accessory. Finally, Randall argues that the jury should have been instructed on the lesser included offense of armed robbery.

¶32. A lesser included instruction was not appropriate. First, Miss. Code Ann. § 97-1-3 (1994) provides that even if the jury had disbelieved that Randall was the shooter, he could still be found guilty of capital murder: "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not." Thus, it is largely irrelevant who did the shooting.[(6)] Randall would still be charged with capital murder unless the jury chose to disbelieve entirely that the two were engaged in the commission of armed robbery. ***State v. Peoples***, 481 So. 2d 1069, 1070 (Miss. 1986).

¶33. Turning now to the argument that the jury could have disbelieved that a robbery was taking place and thus found only manslaughter or simple murder, this Court has recently stated the rule regarding the submission of lesser included offense instructions: "Where the jury could, based on the evidence presented find [the defendant] not guilty of the crime charged, but guilty of the lesser included offense, a lesser included offense instruction is warranted." ***Evans v. State***, No. 93-DP-01173-SCT, 94-CA- 00176-SCT, 1997 WL 562044, at *45 (Miss. Sept. 11,1997). Stated somewhat differently,

> [a] lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all

the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense (conversely, not guilty of at least one essential element of the principal charge)

*Ballenger v. State*, 667 So. 2d 1242, 1255 (Miss. 1995)(*quoting **Conner v. State***, 632 So.2d 1239, 1254 (Miss. 1993)). *cert. denied,* 116 S.Ct. 2565 (1996).

¶34. In this case, Kim Le Che is dead. The unrefuted testimony is that Payne and Randall were going to rob her and her husband. Applying the above test, it is clear that no rational jury could find Randall guilty of the lesser included offense of simple murder or manslaughter and not guilty of capital murder. Miss. Code Ann. § 97-3-19 (2)(e)(1994) defines as capital murder, any murder "[w]hen done with or without any design to effect death, by any person engaged in the commission of . . . robbery . . . or in any attempt to commit such felon[y]."

¶35. Here, there is simply nothing to indicate that Kim Che Le was killed in any context but an armed robbery. Chris Payne testified that Randall and he discussed making some quick cash in a robbery. They were both armed. Corwin Williams testified to the following,

> A. He [Randall] said he shot the Yang. He thought he shot her in the face but he shot her in the neck. And he said Chris hit the man across the head.
>
> Q. When you say Yang, what do you mean?
>
> A. Vietnamese.
>
> Q. Did he use the word Yang?
>
> A. Yeah.
>
> Q. Okay. Did he tell you anything about what they took?
>
> A. Yeah. He said they had grabbed a bag from under the seat, and it was a bag of cucumbers.

Notably, Randall submitted no alternative theory whatsoever as to why he was in Tim Bui's driveway that night. The only evidence presented by both the State and Randall pointed to an armed robbery, albeit an incompetent one. This Court has often and consistently stated that there must be an evidentiary basis for lesser included instructions. *Harveston v. State*, 493 So. 2d 365, 375 (Miss. 1986); *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984); *Colburn v. State*, 431 So. 2d 1111, 1114 (Miss. 1983); *Johnson v. State*, 416 So. 2d 383, 388 (Miss. 1982).

¶36. Thus, even taking all the evidence in the light most favorable to Randall, no rational jury could have disbelieved the armed robbery element of the State's case and also found Randall guilty of manslaughter. Necessarily then, under Miss. Code Ann. § 97-3-19 (2)(e), the murder of Kim Che Le was capital murder if it was anything.

¶37. It is equally clear that Randall's proposed instruction on the lesser included offense of robbery was properly denied. As noted above, "`A 'lesser included offense' is defined as 'one composed of some, but not all, of the elements of the greater crime, and which does not have any element not included in the greater offense.'" *Ballenger*, 667 So. 2d at 1254 (*quoting **Cannaday v. State***, 455 So.

2d 713, 724 (Miss. 1984)). Here, if Randall was guilty of robbery, then *ipso facto* he was also guilty of capital murder. In other words, on the facts of this case, Randall could not rationally be found guilty of the lesser offense of robbery without also being found guilty of capital murder. *See also*, *Doss v. State*, No. 93-DP-00509-SCT, 1997 WL 770606, at\*6 (Miss. Dec. 15, 1997).

## III. CONCLUSION

¶38. In conclusion, the trial court judge was not clearly erroneous in seating juror Allen Perkins and thus denying Randall a peremptory strike. There is sufficient evidence that the judge below found that Randall's reasons for the strike were pre-textual in light of the prima facie case presented by the State. Furthermore, Randall was not entitled to a manslaughter, simple murder, or robbery instruction, there being no evidence on the record to indicate that such instructions were justified.

**¶39. COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. As noted above, ***Batson*** applies to strikes by the defendant as well. "Defendant" and "prosecutor" have thus been replaced with "proponent" and "opponent" where feasible for the sake of clarity.

2. ***J.E.B. v. Alabama***, 511 U.S. at 143-44; ***Hernandez***, 500 U.S. at 360-61; ***Jackson v. State***, 684 So. 2d 1213, 1223 (Miss.), reh'g denied, 691 So. 2d 1026 (1996), *cert. denied,* 117 S.Ct. 1703 (1997); ***Stewart v. State***, 662 So. 2d 552, 559 (Miss. 1995); ***Hatten v. State***, 628 So. 2d 294, 305 (Miss. 1993)(Hawkins, C.J., specially concurring); ***Mack v. State***, 650 So. 2d 1289, 1299 (Miss. 1994).

3. ***Mack***, 650 So. 2d at 1298 (citations omitted); ***Batson***, 476 U.S. at 89; ***Hatten***, 628 So. 2d at 300(Hawkins, C.J., specially concurring); ***Purkett***, 514 U.S. at 768-69; ***Blue v. State***, 674 So. 2d 1184, 1211 (Miss.), *cert. denied,* 117 S.Ct. 588 (1996) (*citing* ***Chisolm v. State***, 529 So. 2d 635, 638 (Miss. 1988)); ***Lockett v. State***, 517 So. 2d 1346, 1348 (Miss. 1987) *cert. denied,* 487 U.S. 1210 (1988).

4. ***Hernandez***, 500 U.S. at 365; ***Lockett***, 517 So. 2d at 1352; ***Mack***, 650 So. 2d at 1299; ***Stewart***, 662 So. 2d at 559 ("[D]emeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality.")(citations omitted); ***Walker v. State***, 671 So. 2d 581, 628 (Miss. 1995), *cert. denied,* 117 S.Ct. 518 (1996).

5. ***Batson***, 476 U.S. at 94; ***Davis***, 660 So. 2d at 1264 (Banks, J., concurring); ***Hatten***, 628 So. 2d at 303(Hawkins, C.J., specially concurring); ***Mack***, 650 So. 2d at 1298.

6. "While it is true that a defendant involved in an armed robbery in which a killing occurs but who did not do the actual killing must have at least contemplated the use of lethal force before the death penalty may be imposed, no such contemplation or intent is required to be found in the guilt phase of the trial." ***Ballenger v. State***, 667 So. 2d 1242, 1254 (Miss. 1995), *cert. denied,* 116 S.Ct. 2565 (1996).