ON WRIT OF CERTIORARI

COLEMAN, Justice, for the Court:
¶ 1. Tyrell Williams was convicted of sexual battery and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Williams asserts he did not knowingly waive his constitutional rights, and the trial court therefore erred in denying his motion to suppress his inculpatory statement. Because the trial judge applied an incorrect legal standard at the suppression hearing, we reverse and remand for a new suppression hearing and a new trial.
Factual Background and Procedural History
¶ 2. Tyrell Williams was charged with sexual battery of a thirteen-year-old-girl, Ann Smith.[1] Williams was twenty-four years old at the time of the alleged incident. Ann provided the following testimony: On January 30, 2009, Ann was walking home from school, and Williams called to her as she walked by his house. She went over to see what he wanted, and Williams forced her into the house, took her to a bedroom, locked the door, and forced her to have sexual intercourse and oral sex. She testified that Williams had threatened to kill her if she told anyone, so initially she did not tell her mother what had happened. Ann’s mother testified that Ann was late coming home from school on the day of the incident, and she thought Ann was acting strangely. After discovering that Ann’s underwear was wet, she took her to the hospital. Ann eventually told the nurse and her mother what happened.
¶ 3. Williams was arrested for sexual battery. Williams’s mother testified that, when she learned of the arrest, she went to sheriffs department and spoke with the arresting officer, Jeff Joel. She told Officer Joel that Williams was “sort of like mental incompetent” and asked if she could be in the room when Williams was questioned. She testified that Officer Joel would not *776 allow her in the room because Williams was over eighteen years old. Officer Joel testified that he verbally advised Williams of his Miranda rights and gave him a written copy of his rights, which Williams signed, indicating that he understood and waived those rights.[2] Officer Joel then took a recorded statement, and Williams confessed to sexual intercourse and oral sex with Ann. Williams claimed Ann approached him and offered to have sex with him. He also claimed he asked Ann how old she was and that she said she was eighteen.
¶4. Williams filed a motion for mental examination, and the trial court granted the motion. Williams was examined first by Dr. Gilbert S. Macvaugh, who found that Williams had a full-scale IQ of 53 and that he was “functioning in the mildly mentally retarded range of intelligence.” Dr. Macvaugh wrote that Williams “appear[ed] to be attempting to malinger symptoms of psychosis ... [and] there was some indication that he may have been attempting to malinger memory and other cognitive deficits retrospectively (at the time of his statement to law enforcement).” Dr. Macvaugh was unable to opine “to a reasonable degree of medical certainty” whether Williams had the capacity to knowingly and intelligently waive his constitutional rights at the time of his confession. He recommended that Williams be evaluated further on an inpatient basis.
¶ 5. Williams was admitted to the Mississippi State Hospital and observed for two months. After that time, Drs. Robert McMichael and Amanda L. Gugliano issued a report, in which they concluded that Williams was competent to stand trial and had “the capacity presently to understand and knowingly, intelligently, and voluntarily to waive or assert his constitutional rights.” However, like Dr. Macvaugh, they could not say whether Williams had the capacity to waive or assert his rights at the time of his confession.
¶ 6. Williams moved to suppress the statement he had made to Officer Joel, and the trial court held a suppression hearing. Williams’s mother testified that Williams had received a disability check since age five or six, and that she had taken him to see mental health workers on a regular basis since he was five years old. She testified that Williams was in special education throughout school, he did not graduate high school, and he was not able to drive, work, or live alone.
¶7. Officer Joel also testified at the suppression hearing. Officer Joel testified that his general practice for a suspect interview was to inform the person of the charges against them and to explain what would be discussed. He would then “go over the rights form with them, explain them [the rights] step by step, ask for questions if [they] are not understanding, [and] explain to them how the interview process is going to work.” Then he would start the tape recorder, “read their rights to them again[,] and ask that a verbal acknowledgment be stated after each right.” Williams signed the “rights form” indicating he had been verbally advised of his Miranda rights and waived those rights. Officer Joel testified that he believed Williams understood his rights. He said Williams’s answers were responsive, he was not hesitant in responding, he provided extreme detail about the incident, and he even corrected Officer Joel’s misstatement of the facts. Williams raised the issue of Ann’s age without being asked or prompted, and at the end of the interview, Williams said he should not have talked to Officer Joel and that he was in trouble now.
*777 ¶ 8. After considering the testimony and the evidence, the trial judge denied Williams’s motion to suppress. He did not enter an order or findings of fact and conclusions of law pertaining to this ruling, but he discussed his findings on the record at the hearing. The judge reviewed the reports from the Mississippi State Hospital doctors and summarized their findings as follows:
[T]hey are unanimous in their opinion that Mr. Williams does have the sufficient present ability to consult with an attorney with a reasonable degree of rational understanding in the preparation of his defense, and that he has a rational as well as a factual understanding of the nature and the object of the legal proceedings against him; that they are also unanimous in their opinion that he has the capacity presently to understand and knowingly, intelligently, and voluntarily to waive or assert his constitutional rights[,] particularly his right not to incriminate himself and his right to a trial; and then thirdly, they say, “We are unable to form an opinion regarding whether or not Mr. Williams had this capacity at the time of his statement to authorities.”
The judge concluded that, because the doctors were unable to form an opinion as to whether Williams was able to understand and knowingly waive his rights, then it fell to the court to make that decision.
¶ 9. In addition to the doctors’ reports, the judge heard testimony from two fact witnesses, and he found Officer Joel’s testimony to be credible. Regarding Williams’s statement to Officer Joel, the judge said:
I have looked at the statement that was given. The statement certainly, as defense counsel stated it would, appears to be rational responses to questions that are asked. There’s nothing in the statement that jumps off the page at you to suggest that Mr. Williams did not understand what was going on at the time, did not understand what he was being questioned about. His responses are appropriate, given the content of the questions. So the State is correct that it was ... Mr. Williams that pointed out the — about asking about the age of the girl or — “I asked her how old she was. She said she was about 18.” That was an unsolicited response or unsolicited information which seems to — or would seem to suggest some level of understanding on his part as to the nature of the proceedings, the fact that the girl being — or the age of 18 being significant, I think, in a case such as this.
The judge also thought Williams’s statements at the end of the interview — that he should not have talked and that he was in trouble now — suggested an understanding of the nature of the proceedings. The judge was concerned with Williams’s low IQ but noted that it is just one factor to consider “in assessing whether or not he would have a genuine understanding or sufficient understanding of his rights.”
¶ 10. Ultimately, the trial judge concluded: “[Biased on the evidence I have in front of me, I cannot rule that he did not understand his rights as they were stated to him by Jeff Joel. Therefore, I’m not going to suppress the statement.” The case proceeded to trial, and Officer Joel was allowed to testify regarding Williams’s statement. The jury found Williams guilty of sexual battery, and the judge sentenced him to twenty years in the custody of the MDOC. Williams appealed, and the Court of Appeals affirmed. Williams v. State, 115 So.8d 805 (Miss.Ct.App.2012). We granted Williams’s petition for writ of cer-tiorari.
*778 Discussion
¶ 11. The only issue on appeal is whether the trial court erred in denying Williams’s motion to suppress the statement he made to law enforcement officials. “This Court will reverse a trial court’s finding that a confession is admissible only when an incorrect legal standard was applied, manifest error was committed, or the decision is contrary to the overwhelming weight of the evidence.” Martin v. State, 871 So.2d 693, 701 (¶ 30) (Miss.2004) (quoting Duplantis v. State, 644 So.2d 1235, 1243 (Miss.1994)). Determining whether the trial judge applied the correct legal standard involves a determination that the correct burden of proof was applied. Neal v. State, 451 So.2d 743, 753 (Miss.1984) (citations omitted).
¶ 12. We repeatedly have held that when the admissibility of a confession is challenged, the “State has the burden of proving voluntariness of the confession and it must be proved beyond a reasonable doubt.” Jones v. State, 841 So.2d 115, 130 (¶ 38) (Miss.2003) (citing Mettetal v. State, 602 So.2d 864, 868 (Miss.1992); Neal, 451 So.2d at 753). In addition to a confession being voluntary, waiver of one’s rights in making that confession must be knowing and intelligent. ‘When an accused makes an in-custody inculpatory statement without the advice or presence of counsel, even though warnings and advice regarding his privilege against self-incrimination have been fully and fairly given, the State shoulders a heavy burden to show a knowing and intelligent waiver.” Neal, 451 So.2d at 753 (citing Fare v. Michael C., 442 U.S. 707, 724, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197, 212 (1979); Miranda, 384 U.S. at 475, 86 S.Ct. at 1628; Abston v. State, 361 So.2d 1384, 1391 (Miss.1978)).
 ¶ 13. Where the issue of mental retardation is raised, as it is here, “the trial judge must first determine whether the accused, prior to the confession, understood the content and substance of the Miranda warning and the nature of the charges of which he was accused.” Martin, 871 So.2d at 701 (¶ 29) (citing Neal, 451 So.2d at 755). We have held that “mild mental retardation of the defendant does not render a confession per se involuntary; rather, the defendant’s mental abilities are but one factor to be considered.” Harden v. State, 59 So.3d 594, 605 (Miss.2011) (citing Neal, 451 So.2d at 756). The court must consider the totality of the circumstances to determine whether a knowing and voluntary waiver has occurred. Smith v. State, 534 So.2d 194, 197 (Miss.1988).
¶ 14. “When all of the facts and circumstances of the particular confession and the interrogation leading up to it are considered — including the accused’s abilities — the trial judge must find as a fact whether the confession was intelligently and voluntarily made.” Neal, 451 So.2d at 756. Again, the State bears the burden of proving beyond a reasonable doubt that the defendant made a knowing and intelligent waiver of his rights and that his confession was voluntary. Jones, 841 So.2d at 130 (¶ 38); Neal, 451 So.2d at 753. When the trial judge applies the correct legal standard and considers the totality of the circumstances surrounding the confession, the trial judge’s fact finding on “whether the confession was intelligently and voluntarily ... will not be disturbed unless we find it clearly erroneous.” Neal, 451 So.2d at 756. However, where the trial court applies an incorrect legal standard, we must reverse. Duplantis, 644 So.2d at 1243-44.
¶ 15. At the end of the suppression hearing, the trial judge concluded: “I cannot rule that [Williams] did not understand his rights as they were stated to him by *779 Jeff Joel. Therefore, I’m not going to suppress the statement.” In so finding, the trial judge reversed the applicable standard and improperly placed the burden on the defendant to prove that he did not understand his rights. The burden was on the State to prove beyond a reasonable doubt that Williams did understand his rights and that he made a knowing, intelligent, and voluntary confession. Because the trial judge articulated an incorrect legal standard, we reverse and remand the matter for a new trial. Prior to the trial, the judge should hold a new suppression hearing and apply the standards set forth herein. Further, because the Court of Appeals erroneously held that the trial judge applied the correct legal standard, the judgment of the Court of Appeals also is reversed.
Conclusion
¶ 16. The trial judge applied an incorrect legal standard by shifting the burden of proof to the defendant. Therefore, the judgments of the Court of Appeals and of the Circuit Court of Bolivar County, Second Judicial District, are reversed, and the case is remanded for a new suppression hearing and a new trial.
¶ 17. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR AND PIERCE, JJ., CONCUR. CHANDLER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ. KING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.

. We use a fictitious name to protect the identity of the victim.

. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966).