# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01032-SCT

*CHRISTOPHER LEE BAXTER a/k/a CHRIS
BAXTER a/k/a CHRISTOPHER BAXTER*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                    05/15/2012
TRIAL JUDGE:                         HON. RICHARD W. McKENZIE
TRIAL COURT ATTORNEYS:               ANTHONY N. LAWRENCE, III
                                     CHERIE WADE
                                     THOMAS M. FORTNER
                                     WILLIAM B. KIRKSEY
COURT FROM WHICH APPEALED:           GEORGE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              OFFICE OF STATE PUBLIC DEFENDER
                                     BY: STACY L. FERRARO
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: ELLIOTT GEORGE FLAGGS
DISTRICT ATTORNEY:                   ANTHONY N. LAWRENCE, III
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                         AFFIRMED - 08/06/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     In the summer of 2010, a George County sheriff's deputy attempted to pull over a

Chevrolet pickup truck. In the truck were Christopher Baxter and Brandy Williams. The

truck did not stop, and a high-speed chase ensued. In an effort to apprehend the two, the

George County Sheriff's Department set up a roadblock. The truck, however, did not stop, and  Sheriff Garry Welford was run over and killed.

¶2.     Baxter and Williams were charged with capital murder and tried separately. Baxter was convicted and sentenced to life in prison without the possibility of parole. He appealed, and the Court of Appeals affirmed his conviction. This Court subsequently granted Baxter's petition for certiorari.

¶3.     Finding no reversible error at the trial-court level or at the Court of Appeals, we affirm. We write, however, to discuss the differences between *Baxter v. State* and *Williams v. State*. *Compare **Baxter v. State***, No. 2012-KA-01032-COA, 2014 WL 3715840 (Miss. Ct. App. July 29, 2014), *reh'g denied* (Nov. 25, 2014), *cert. granted* (Miss. Feb. 19, 2015), *and **Williams v. State***, No. 2012-KA-01839-COA, 2014 WL 6756335, at *1 (Miss. Ct. App. Dec. 2, 2014).

## FACTS AND PROCEDURAL HISTORY

¶4.     The facts and procedural history are taken from the Court of Appeals opinion.

> When Baxter failed to appear at a sentencing hearing on July 19, 2010, [the trial court issued] a bench warrant . . .for his arrest. On July 21, 2010, Sheriff Welford told Deputy Bobby Daffin about the bench warrant and instructed him to be on the lookout for Baxter. Deputy Daffin knew Baxter and his girlfriend, Brandy Williams, from their prior encounters with law enforcement. Later that same day, Deputy Daffin saw Williams driving her father's maroon Chevrolet Z71 pickup truck in Lucedale, Mississippi. Deputy Daffin had seen . . . Williams[] driving the truck before, and he knew that Baxter was usually in the truck with her. Deputy Daffin could see the arm of a passenger, who appeared to be leaning back in the seat in order to hide. He could not see the passenger's face, but based on his suspicion that the

2

passenger was Baxter, he made a u-turn on Old Highway 63 and drove toward the truck to further investigate.

As Deputy Daffin neared the truck . . . the driver fled at a high rate of speed. After witnessing the truck pass several cars in a no-passing zone and force other vehicles off the road, Deputy Daffin initiated his blue lights . . . . The driver refused to stop, leading law enforcement on a seventeen-mile chase, with speeds reaching over 100 miles per hour. Based on information received from Deputy Daffin regarding the truck's location, Sheriff Welford and Deputies John Keel, Duane Bowlin, and Justin Bowlin positioned themselves at the intersection of Bexley and Howard Roads to intercept the truck. The sheriff and deputies were wearing uniforms; and although their vehicles were unmarked, the vehicles' blue lights were activated. Approximately two minutes after arriving at the intersection, the deputies heard a vehicle approaching. [They then saw] Williams's truck . . . speeding toward them. According to one of the deputies at the scene, it seemed that the truck never attempted to slow down, but rather continued to accelerate through the intersection. The deputies attempted to get out of the . . . way. The truck swerved around the unmarked cars, striking Sheriff Welford in the process. Sheriff Welford was thrown to the side of the road, [but the truck did not stop]. Paramedics were called, and Sheriff Welford was taken by helicopter from the scene to a hospital in Mobile, Alabama, where he died. None of the officers could positively identify the driver at the time Sheriff Welford was struck. None of the deputies saw the driver's face.

Williams's truck was found wrecked in a creek. The center of the truck's hood was noticeably dented. Baxter and Williams were found [that] morning . . . , hiding in a trailer in the woods. Baxter was in a closet. He refused to surrender his hands for the officers to handcuff him, so he was tased. He then complied and was arrested.

Once in custody, Baxter waived his Miranda rights and admitted to his participation in the high-speed chase. He confessed that he was the driver for the entire pursuit. However, after he was informed that the driver could be determined from security-camera footage, he admitted that Williams was initially driving, but explained that they switched seats before the sheriff was hit. He was adamant that Williams played no part in the crime, only acting at his direction. He stated that they fled because a deputy had "got behind us" and that he then "took [the deputy] for a ride . . . down a bunch of roads." He saw patrol vehicles as he rounded the curve at the intersection of Bexley and

Howard Roads, and also saw deputies standing in the road. He admitted that he "might of nudged one of them or something" with the truck's bumper. Although his memory was unclear, Baxter believed that immediately after this happened, he looked at Williams and said, "I may have f * * *ed up." He then went around a curve, lost control of the truck, and the truck slid off the road into a ditch. He and Williams fled on foot through the woods and sought refuge in an abandoned trailer. [Law enforcement video recorded] Baxter's confession, [and it] was admitted into evidence.

All but one of the witnesses testified that a female was driving during the chase. The witness who saw Williams's vehicle near the intersection where the sheriff was struck testified that she saw a male driver. Deputy Bowlin, who saw the vehicle at the moment of impact, testified that the passenger [appeared to have] the same hairstyle as Baxter, but he did not get a clear look. None of the deputies could describe the driver. Robin Howell, Baxter's aunt, testified that she spoke with Williams during the chase, and Williams said, "They're everywhere. They're everywhere. They're all over me. I've got to change roads." Howell then heard Baxter in the background say, "Just go then. Just go."

Both Baxter and Williams were indicted for the [depraved heart] capital murder of Sheriff Welford. Baxter's trial was held May 7-11, 2012. Williams was tried in September 2012. At both trials, it was disputed whether Baxter or Williams was the driver of the truck. Despite Baxter's confession that he was the driver, his defense at trial was that he was merely a passenger in the truck driven by Williams, and that he did not aid or abet Williams in the crime. Both Baxter and Williams were found guilty of [depraved heart] murder and sentenced to life in the custody of the Mississippi Department of Corrections without eligibility for parole. Baxter . . . appeal[ed].

*Baxter v. State*, No. 2012-KA-01032-COA, 2014 WL 3715840, at **1-2 (Miss. Ct. App. July 29, 2014), *reh'g denied* (Nov. 25, 2014), *cert. granted* (Miss. Feb. 19, 2015).

4

¶5. In addition to the above facts, it is important to note that the trial court found Baxter ineligible for the death penalty under ***Chase v. State***[1] based on the testimony of Baxter's and the State's expert witnesses at a pretrial hearing.

¶6. The Court of Appeals affirmed Baxter's conviction, and Baxter timely filed a petition for certiorari, which this Court granted. We address two issues:[2]

    **1.** **As the jury's mid-deliberation question demonstrated, giving instruction S-6A did not cure the confusion created by instructions S-3A, S-5 and S-7, which relieved the state of its burden of proof under the law of accomplice responsibility.**

    **2.** **The circuit court erred in admitting Baxter's involuntary, unreliable and coerced "confession."**

## DISCUSSION

    **1.** **As the jury's mid-deliberation question demonstrated, giving instruction S-6A did not cure the confusion created by instructions S-3A, S-5 and S-7, which relieved the state of its burden of proof under the law of accomplice responsibility.**

¶7. We review jury instructions under the abuse-of-discretion standard. ***Reith v. State***, 135 So. 3d 862, 864-65 (Miss. 2014).This Court must read the instructions as a whole to

---

[1] ***Chase v. State***, 873 So. 2d 1013 (Miss. 2004).

[2] Baxter also asserts the trial court erroneously admitted evidence of his prior convictions. The Court of Appeals found that Baxter waived his objection to the admission of his prior convictions when he withdrew his objection to the State admitting an unedited version of his videorecorded confession. The unredacted confession included references to prior convictions and drug use. Because we agree with the Court of Appeals on this issue, we decline to address it.

determine if the jury was properly instructed. *Wilson v. State*, 967 So. 2d 32, 36-37 (Miss. 2007) (citing *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993)).

¶8.     Baxter argues the Court of Appeals has ruled inconsistently regarding jury instruction S-7.  He also argues, that the instruction allowed for a conviction if the jury concluded that his failure to appear for sentencing contributed to the sheriff's death.

¶9.     In Baxter's appeal, the Court of Appeals first found Baxter's objection to S-7 procedurally barred because his objection on appeal was different from his objection at trial. *Baxter v. State*, No. 2012-KA-01032-COA, 2014 WL 3715840, at *17 (Miss. Ct. App. July 29, 2014), *reh'g denied* (Nov. 25, 2014), *cert. granted* (Miss. Feb. 19, 2015). The court nevertheless went on to provide that instructions S-6A and S-3A, when read with S-7, properly informed the jury of the law. *Id.*

¶10.    In *Williams v. State*, however, the Court of Appeals reached a different conclusion. There, the trial court granted a jury instruction identical to S-7. *Williams*, 2014 WL 6756335, at *8. On appeal, the Court of Appeals found the instruction improperly shifted the burden of proof because S-7 was cumulative of three other aiding and abetting instructions provided to the jury. *Williams*, 2014 WL 6756335, at *8. The Court of Appeals reasoned that, given the other instructions and the possible confusion created by S-7, it was impossible to say the jury did not read S-7 as requiring Williams to prove she did not commit an act that contributed to the sheriff's death. *See Williams*, 2014 WL 6756335, at *8.

6

¶11. On its face, it appears the Court of Appeals first found that the aiding and abetting instructions clarified S-7. Therefore, there was no error. **Baxter**, 2014 WL 3715840, at *17. Then, later in the case of Baxter's codefendant, the Court of Appeals found that the aiding and abetting instructions made S-7 confusing, thereby shifting the burden to the defendant. **Williams**, 2014 WL 6756335, at *8.

¶12. Putting aside the Court of Appeals' opinion in **Williams**, we first address Baxter's allegations regarding jury instruction S-7.

### Jury Instruction S-7 in Baxter v. State

¶13. At trial, Baxter objected to S-7 as cumulative and confusing. Later, in his motion for judgment notwithstanding the verdict or, alternatively, a new trial, Baxter argued that S-7 was not only cumulative, but that it also "unconstitutionally diminished the State's burden of proof." We find this objection sufficiently preserved this issue for appellate review. Baxter argues that the instruction was overly broad and would allow a conviction even if the jury found his failure to appear for sentencing contributed to the sheriff's death.[3] That is, the instruction allegedly diminished the State's burden to show Baxter actually caused the death. While we agree that S-7 is imprecise, when read with the other instructions in the context of

---

[3] In his petition for certiorari, Baxter claims the Court of Appeals, in finding his argument regarding S-7 on appeal procedurally barred, ignored "the thrust" of **Sandstrom v. Montana**, 442 U.S. 510, 517, 99 S. Ct. 2450, 2456, 61 L. Ed. 2d 39 (1979). That case, however, does not address procedural bars regarding jury instructions. There, the United States Supreme Court addressed the potential for jury confusion created by instructions that allowed a jury to presume malice based on the defendant's voluntary acts. **Sandstrom**, 442 U.S. at 517. The case is of no moment in the instant matter.

7

this case, we cannot say that the trial judge abused his discretion in granting it. Under our precedent, we must determine if S-7, when read in the context of the other instructions, "fairly announce[d] the law of the case and create[d] no injustice . . . ." ***Wilson v. State***, 967 So. 2d 32, 36-37 (Miss. 2007) (citing ***Coleman v. State***, 697 So. 2d 777, 782 (Miss. 1997) (quoting ***Collins v. State***, 691 So. 2d 918 (Miss. 1997))). If so, "no reversible error will be found." ***Id.*** "In other words, if all instructions taken as a whole fairly, [although] not necessarily perfectly, announce the applicable rules of law, no error results." ***Id.*** (citing ***Milano v. State***, 790 So. 2d 179, 184 (Miss. 2001)).

¶14.    The jury instructions at issue provide:

**S-3A** (in pertinent part):

If you find from the evidence in this case, beyond a reasonable [doubt] that:

> (1) On or about July 21, 2010, in George County, Mississippi;
> (2) CHRISTOPHER LEE BAXTER, alone or in conjunction with another, killed Garry Welford, a human being and peace officer, while Garry Welford was acting in his official capacity as a peace officer, with knowledge that Garry Welford was a peace officer,
> (3) and that said killing was done without authority of law by any means or in any manner, in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual . . . .

**S-5:**

> One who willfully, unlawfully, and feloniously aids, abets, assists, or otherwise encourages the commission of a crime is just as guilty under the law as if he or she had committed the whole crime with his or her own hands.

**S-6A:**

The guilt of a defendant in a criminal case may be established without proof that the defendant did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

**S-7:**

The Court instructs the Jury that it is not necessary that an unlawful act of the Defendant be the sole cause of death. Responsibility attaches if the act of the Defendant contributed to the death. If you believe the Defendant committed an unlawful act or aided and abetted another in committing an unlawful act that contributed to the death of Garry Welford, then the Defendant is not relieved of responsibility by the fact that other causes may have also contributed to his death.

¶15. In addition to these instructions, the court provided a general instruction informing the jury that the State had the burden to prove every essential element beyond a reasonable doubt, and that the defendant enjoyed a presumption of innocence until the State proved guilt beyond a reasonable doubt.

9

¶16.   In Baxter's case, the State put forth two theories. The first was that Baxter was driving at the time the truck struck Sheriff Welford; and therefore, he was guilty as the principal actor. Or, alternatively, Baxter was not driving the truck at all, but he was directing and controlling Williams, who was driving when the truck hit Sheriff Welford. And therefore, Baxter was guilty as an aider and abettor. Baxter raised as a defense that the Sheriff's Department, by negligently continuing in a dangerous pursuit and by negligently conducting the roadblock, was equally responsible for the sheriff's death. This raises the question, regarding jury instruction S-7, of whether the instructions, taken as a whole fairly, though not necessarily perfectly, announce the rule of law regarding aiding and abetting and contributory causes.

¶17.   Here, Baxter does not dispute that S-6A properly instructed the jury on aiding and abetting. *See **Milano v. State***, 790 So. 2d 179, 185 (Miss. 2001); ***Jones v. State***, 95 So. 3d 641, 648-49 (Miss. 2012) (find an aiding-and-abetting instruction substantially similar to S-6A correctly informed the jury on aiding and abetting).[4] Likewise, Baxter does not challenge S-5 as an incorrect statement of law; though he did object to S-5 as commutative of S-6A.

---

[4] Under Mississippi law, "[a]iding and abetting is 'the offense committed by those persons who, although not the direct perpetrators of a crime, are yet present at its commission, doing some act to render aid to the actual perpetrator.'" ***Graham v. State***, 120 So. 3d 382, 389 (Miss. 2013), *reh'g denied* (Sept. 12, 2013) (quoting ***Smith v. State***, 237 Miss. 498, 115 So. 2d 318, 322 (1959) (internal citation omitted)). That is, "any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an aider and abettor and is equally guilty with the principal offender. ***Id.*** (citing ***Swinford v. State***, 653 So. 2d 912, 915 (Miss. 1995)).

*See Hoops v. State*, 681 So. 2d 521, 533 (Miss. 1996) ("Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an aider and abettor and is equally guilty with the principal offender.").

¶18.    Whether instruction S-7 is a precise statement of the law, however, is at issue. As noted above, the trial court provided two correct jury instructions addressing aiding and abetting. In contrast, a comparison with S-7 and an examination of the relevant caselaw reveals that it is an incorrect statement of aiding-and-abetting law. *See Milano*, 790 So. 2d at 185 (adopting the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting, which is same instruction as S-6 given in this case).[5]    However, the State did not offer S-7 as an aiding-and-abetting instruction. At trial, the prosecution stated the instruction went to multiple contributing causes of an injury, and it was under this context that the trial court granted the instruction. Baxter raised no objection to the instruction in this regard.

¶19.    The instruction, as the State provided at trial, was drawn from cases in which there is more than one cause of an injury. Specifically, the State cited a case in which a victim was struck on the head with a club and subsequently died due, in part, to maltreatment by his attending physician. *See Fairman v. State*, 513 So. 2d 910, 913 (Miss. 1987) (holding that the test for responsibility in such circumstance "is whether the act of the accused contributed

_____

[5] Instruction S-6 in this case is identical to the *Milano* instruction with the exception of the last paragraph, which the parties omitted by agreement.

to the death, and, if it did, he is not relieved of responsibility by the fact that other causes also contributed."). This instruction goes to Baxter's defense that the Sheriff's Department's conduct contributed to Sheriff Welford's death.

¶20.    The trial court, however, also permitted aiding-and-abetting language in the instruction. This makes it understandable why Baxter's objections at trial and on appeal to S-7 are couched in the terms of aiding-and-abetting law. But that does not change the fact that the instruction was offered and accepted as a contributing-cause instruction.

¶21.    While the instruction's language is problematic, our law does not require jury instructions to be perfectly worded, so long as the instructions as a whole fairly instruct the jury and create no injustice. *See **Wilson***, 967 So. 2d at 36-37; ***Milano***, 790 So. 2d at 184. Here, the jury received two instructions, S-5 and S-6A, that fairly stated our aiding-and-abetting law. Baxter also raised a contributing-cause defense, and therefore the trial court did not abuse his discretion in granting an instruction on this point. Given that aiding and abetting, as well as contributing causes, were issues in this trial, we cannot say, taking the instructions as a whole, that the jury was not fairly informed of the relevant law or that S-7 created an injustice. *See **Wilson***, 967 So. 2d at 36-37; ***Milano***, 790 So. 2d at 184.

¶22.    Moreover, S-7, contrary to Baxter's argument, did not allow the jury to convict him for the sheriff's murder because he failed to appear at his sentencing hearing. The thrust of Baxter's argument is that the phrase "unlawful act" in the instruction is so broad that the jury could have convicted him for murder simply because he missed his court date. Arguably, one

12

could read the instruction as Baxter claims. But, given the context of the case, when read with the other jury instructions, it is clear that the instruction is referring to the unlawful acts of evading law enforcement or encouraging another to do so.

¶23.	A central theme of the State's case was that Baxter unlawfully fled from law enforcement or encouraged Williams to do the same. There was testimony that while they were fleeing from the police, Williams said "they're everywhere, they're everywhere," to which Baxter replied "go, just go." This testimony came from Baxter's aunt, who was speaking with Williams on the phone during the chase. The cell phone records show that the call to Williams was at 2:49 and lasted eighty-eight seconds. The George County Sheriff's Department's dispatch log shows that, at 2:53, deputies reported that the sheriff had been struck. While the record does not clarify who Williams was referring to as "they," a reasonable juror could infer from the circumstance that "they" were the police. And given the close time proximity between the phone call and the time the deputies reported that the sheriff had been hit, a reasonable juror could just as easily infer "they" specifically referred to the roadblock where the sheriff was killed. This inference is bolstered by the fact that the record suggests that only one deputy was actually in pursuit of Williams and Baxter during the chase.

¶24.	Additionally, in his confession, Baxter stated he wouldn't let Williams out of the truck. He stated that he told her "b**** go" when the deputy got behind them, and he warned her not to stop. And after the sheriff was struck, Baxter said he made Williams go with him

to the trailer to evade the police. Baxter also confessed that he was driving at the time the sheriff was hit. As a result, it appears that Baxter was either driving or directing Williams during the entire event. *See **Graham***, 120 So. 3d at 389 (aiding and abetting is the offense committed by a person present at the commission of a crime who is not the principal but commits some act with the intent to render aid to the actual perpetrator).

¶25.    Accordingly, we find the instruction, when read with the other instructions and given the context of the case, referred to the unlawful act of evading law enforcement or encouraging Williams to do so.

¶26.    Baxter also claims that the Court of Appeals erred in applying a similar analysis and reaching the same conclusion.  Baxter claims the jury instructions as a whole could not cure S-7 because the instructions, taken together, confused the jury. As evidence of this confusion, Baxter, for the first time on appeal, points to a note the jury sent the trial judge. The note stated:

> In Item 2 of the capital murder directive, is "in conjunction with" all that is required? Explanation: we are having some conflict between "in conjunction with" and if the Defendant was "directing." 3:51 pm.

The trial judge, without objection, responded:

> Members of the jury, you have received all of the evidence introduced during the course of this trial as well as the instructions of the Court. Please continue your deliberations.

¶27.    The record contains no evidence that this note referenced any confusion as to S-7. The two instructions from which it seems the "in conjunction with" and "directing" language

14

were taken were instructions S-3A and S-6, both of which were correct statements of the law (S-3 contained "in conjunction with;" S-6 referenced "directing;" S-7 mentioned neither). And, importantly here, if the jury found Baxter killed the sheriff in conjunction with Brandy Williams, or that the sheriff was killed while Baxter was directing Brandy Williams to drive recklessly in disregard for human life, he was guilty of depraved-heart murder either way.

¶28. As a result, we hold that, while S-7 was imprecise, we cannot say that the instruction, when read with the other instructions, constituted reversible error. The jury received two correct instructions, and the overwhelming evidence at trial supported Baxter's conviction either as a principal or as an aider and abettor.[6] *See **Jones v. State***, 95 So. 3d 641, 650 (Miss. 2012) (recognizing that when jury instructions, read as a whole, properly state the applicable law, there is no error).

### Jury Instruction S-7 in Williams v. State

¶29. Turning back to **Williams**, we note that, while we do not take a position one way or the other on the Court of Appeals' ruling in that case, as it is not before us, we do find it necessary to explain why today's holding differs from the holding in **Williams** regarding S-7.

¶30. First, the objection in **Williams**, in part, was different from Baxter's. Williams argued that the instruction addressed contributory causes, which were not relevant because the collision between the truck and Sheriff Welford was the sole cause of death. **Williams**, 2014

---

[6]And while we find no reversible error in the context of today's case, this opinion should not be read as an endorsement of jury instruction S-7.

WL 6756335, at *7. Baxter did not raise this objection at trial or on appeal, and as a result, we do not consider it here. *See Medina v. State*, 688 So. 2d 727, 729 (Miss. 1996) (noting that this Court does not consider issues not properly before the Court).

¶31. Secondly, while both cases arise out of the same factual background, the context of S-7 is different as applied to Baxter and Williams. In *Williams*, an abandonment defense was asserted. *Williams*, 2014 WL 6756335 at **7-8. Williams claimed she abandoned the effort to flee law enforcement during the chase. Baxter did not raise this defense. As a result, there was no danger in *Baxter*, as the Court of Appeals found in *Williams*, that the jury could read S-7 as requiring Baxter to have to prove he abandoned his flight. *See id.*

¶32. In sum, while we do not review the merits of *Williams* as the Court of Appeals did, we do find that today's case is sufficiently different that the two rulings are not in conflict.

## 2. The circuit court erred in admitting Baxter's involuntary, unreliable and coerced "confession."

¶33. The circuit court held Baxter's confession admissible in the instant case but not in Williams's case. At first blush, this may seem contradictory; however, the admissibility of the confession in these two cases came under different legal rules. In *Williams*, the defendant offered the confession, and it was reviewed under our hearsay rules in the Mississippi Rules of Evidence. *Williams*, 2014 WL 6756335, at *3. In *Baxter*, the State offered the confession and the issue was not hearsay, but whether the confession was knowing, voluntary, and intelligent. *Baxter*, 2014 WL 3715840, at **5-9. Under these two different legal theories, it is possible for the same confession to be admissible in one case and not in the other.

16

¶34.    Again, we note that we make no findings regarding **Williams**,[7] but suffice it to say that, under Mississippi Rule of Evidence 804(b)(3), a key consideration in criminal cases is the reliability of exculpatory hearsay evidence. M.R.E. 804 (b)(3). In contrast, reliability and veracity are not considerations in determining the admissibility of an accused's own confession. **Richardson v. State**, 722 So. 2d 481, 488 (Miss. 1998). In determining whether a defendant validly waived his or her **Miranda** rights,[8] the trial judge must make a factual determination, from the totality of the circumstances, that the waiver was made intelligently, knowingly, and voluntarily. **Id.**; *see also* **Holland v. State**, 587 So. 2d 848, 860 (Miss. 1991) (quoting **State v. Whitaker**, 578 A.2d 1031, 1039 (Conn. 1990) (recognizing that determinations of voluntariness "should focus on defendant's 'experience with the police and familiarity with warnings; intelligence, including I.Q.; age; education; vocabulary and ability to read and write in the language in which the warnings were given; intoxication; emotional state; mental disease, disorder or retardation'"). The truthfulness or reliability of those statements, if obtained properly, is a question for the jury. **Rogers v. Richmond**, 365 U.S. 534, 544, 81 S. Ct. 735, 741, 5 L. Ed. 2d 760 (1961) ("The attention of the trial judge should [be] focused . . . on the question whether the behavior of the State's law enforcement

---

    [7] The Court of Appeals in **Williams** held the trial court committed reversible error in excluding Baxter's statements in Williams's trial because the confession met the reliability requirements under the hearsay rule. **Williams**, No. 2012-KA-01839-COA, 2014 WL 6756335, at *7.

    [8] **Miranda v. Arizona**, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1629-30, 16 L. Ed. 2d 694, 726 (1966).

17

officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined – a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth."). Accordingly, we find no error in the Court of Appeals' ruling in **Baxter** to the extent the court held that truthfulness was not a factor in determining the admissibility of Baxter's confession.

¶35.    Baxter also argued that, because of his mental disability and the facts surrounding his confession, the trial court erred in finding it was intelligently and voluntarily made. When considering the issue of intellectual disability in this context, "the trial judge must first determine whether the accused, prior to the confession, understood the content and substance of the **Miranda** warning and the nature of the charges of which he was accused." **Williams v. State**, 115 So. 3d 774, 778 (Miss. 2013) (quoting **Martin v. State**, 871 So. 2d 693, 701 (Miss. 2004)). Furthermore, mild intellectual disability of "the defendant does not render a confession per se involuntary; rather, the defendant's mental abilities are but one factor to be considered." **Id.** And, as noted above, the Court in **Holland** recognized a number of these factors, including the defendant's familiarity with the **Miranda** warnings, his IQ, and any mental disease, disorder, or intellectual disability. **Holland**, 587 So. 2d at 860.

¶36.    Recently, in **Williams v. State**, not to be confused with **Brandy Williams v. State**, this Court considered the same argument as put forth by Baxter that a person who is intellectually disabled cannot knowingly waive his **Miranda** rights. There, the Court noted the above rule

18

and reaffirmed that, under Mississippi law, mental disability alone does not render a confession involuntary per se. *Williams*, 115 So. 3d at 778.

¶37. Nevertheless, Baxter urges this Court to adopt the position of the dissent in *Williams*. There, the dissent expressed concern that someone with Williams's IQ, which was 55, could not knowingly and intelligently waive her *Miranda* rights. *Id.* at 779-80. Specifically, Baxter points to the dissent's discussion of the susceptibility of mildly retarded individuals to suggestive leading questions by law enforcement. Baxter claims that his answers in his confession were the product of law enforcement's leading questions.[9]

¶38. But we find no reason to depart from our prior holdings. *See Stone v. Reichman-Crosby Co.*, 43 So. 2d 184, 190 (Miss. 1949) (discussing the principle of *stare decisis*). Baxter offers no evidence, much less compelling evidence, that our prior holdings have perpetuated a pernicious error. *See id.* Furthermore, the dissent in *Williams* was directed at individuals with IQs between 50 and 55. *Williams*, 115 So. 3d at 779-80. Baxter, according to his expert, has an IQ of 65, and according to the State, an IQ of 75.

¶39. More to the point, the trial court in the current case clearly considered Baxter's low IQ. Specifically, the trial court noted that, considering Baxter's mental disability and the

---

[9] Baxter also claims that in *Brandy Williams v. State*, the State affirmatively argued that Baxter's confession was the product of suggestive questioning, implying the law enforcement officers took advantage of Baxter's weak intellect to obtain a false confession. A review of the State's motion and oral argument before the trial court do not support this contention. The State in *Williams* argued only that Baxter's statement lacked credibility, and that it evolved as law enforcement officials revealed that they suspected Baxter was lying about certain aspects of his version of events.

totality of the circumstances, including possible carryover knowledge from prior arrests, he found the *Miranda* waiver to be knowing, intelligent, and voluntary. And, as this Court has held, "As long as the trial judge applies the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence." *Chamberlin v. State*, 989 So. 2d 320, 331-32 (Miss. 2008).

¶40. Here, the trial court specifically considered the testimony of two experts, both of whom found Baxter competent to stand trial, although he was intellectually disabled under *Atkins* and *Chase*.[10] When asked if Baxter had the mental capacity to knowingly waive his *Miranda* rights, the experts reached somewhat different conclusions, though their testimony supported the trial court's findings. Dr. Criss Lott, testifying for the State, stated that Baxter could knowingly and, to some degree, intelligently waive his *Miranda* rights, depending on how "intelligently" was defined. Later in his testimony, Dr. Lott clarified, and unequivocally provided that, in his opinion, Baxter had the capacity to waive his *Miranda* rights. Dr. Gerald O'Brien, testifying for Baxter, was more equivocal. Dr. O'Brien testified that if someone simply read the *Miranda* warning to Baxter, giving him a copy to follow along, in a "one-shot deal," Baxter would "probably not" understand the waiver. But, Dr. O'Brien acknowledged that, Baxter may have had "carryover knowledge" of his *Miranda* rights from

_____

[10] *Atkins v. Virginia*, 536 U.S. 304, 306, 122 S. Ct. 2242, 2244, 153 L. Ed. 2d 335 (2002).

20

his previous arrests, and that he observed no indication, including from the police interview as well as his own interview, that Baxter did not understand his *Miranda* waiver.

¶41.    Under these circumstances, we cannot say the trial court committed manifest error or that his ruling was against the overwhelming weight of the evidence. Accordingly, we affirm.

## CONCLUSION

¶42.    For the above-mentioned reasons, Baxter's conviction and sentence in the Circuit Court of George County and the judgment of the Court of Appeals are affirmed.

¶43.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED.  SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY WITH SENTENCES IN CAUSE NUMBERS 2009-10,073 AND 2010-10,057.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER AND COLEMAN, JJ., CONCUR.  KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.  PIERCE, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶44.    Because the jury could have found from instructions it was provided that Christopher Lee Baxter was guilty of two separate and distinct courses of criminal conduct, I find that the prosecution was relieved of its burden of proving its theory of guilt beyond a reasonable doubt. I therefore dissent.

¶45.    Jury Instruction S-3A informed the jury of the elements of capital murder of a peace officer:

If you find from the evidence in this case, beyond a reasonable [doubt] that:

21

(1) On or about July 21, 2010, in George County, Mississippi;

(2) CHRISTOPHER LEE BAXTER, alone or in conjunction with another, killed Garry Welford, a human being and peace officer, while Garry Welford was acting in his official capacity as a peace officer, with knowledge that Garry Welford was a peace officer,

(3) and that said killing was done without authority of law by any means or in any manner, in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual

(4) and not in necessary self-defense,

then you shall find the Defendant, CHRISTOPHER LEE BAXTER, guilty of Capital Murder.

Instruction S-5 then informed the jury that:

One who willfully, unlawfully, and feloniously aids, abets, assists, or otherwise encourages the commission of a crime is just as guilty under the law as if he or she had committed the whole crime with his or her own hands.

Instruction S-6A provided the following:

The guilt of a defendant in a criminal case may be established without proof that the defendant did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

Finally, Instruction S-7 was as follows:

The Court instructs the Jury that it is not necessary that an unlawful act of the Defendant be the sole cause of death. Responsibility attaches if *the act* of the Defendant contributed to the death. If you believe the Defendant committed an unlawful act *or* aided and abetted another in committing an unlawful act that contributed to the death of Garry Welford, then the Defendant is not relieved of responsibility by the fact that other causes may have contributed to his death.

(Emphasis added.)

¶46.    Baxter argues in his Petition for Writ of Certiorari that the jury, based on Instruction S-7, could convict him "if his failure to report for his sentencing on the drug charges was an 'act' (under the second sentence of the instruction) or an 'unlawful act' (under the third sentence of the instruction) 'that contributed to the death of Gar[r]y Welford.'" Baxter made the same argument in the Court of Appeals, stating that Instruction S-7 deprived him of his right "to have the jury find every element of the charge against him beyond a reasonable doubt." At trial, Baxter's counsel had objected to Instruction S-7 by stating: "[i]t's cumulative, and it's confusing and S-6A has everything in it that is required to be instructed to the jury concerning this accomplice liability issue." Following conviction, Baxter filed a

23

Motion for Judgment Notwithstanding the Verdict in which he argued that Instruction S-7 incorrectly stated the law and "unconstitutionally diminished the State's burden of proof."

¶47.    An accused has a fundamental right under the Mississippi Constitution and the U.S. Constitution to have the State prove guilt beyond a reasonable doubt. *McBride v. State*, 934 So. 2d 1033, 1038 (Miss. Ct. App. 2006) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)); *Evans v. State*, 919 So. 2d 231, 235 (Miss. Ct. App. 2005). Nevertheless, this Court has recognized "that criminal defendants in state courts do not have a federal constitutional right to a unanimous verdict by a twelve-member jury." *Fulgham v. State*, 46 So. 3d 315, 324 (Miss. 2010) (citations omitted); *see Johnson v. Louisiana*, 406 U.S. 356, 358, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972) (due process of law not violated by a state law requiring less-than-unanimous jury verdicts); *Apodaca v. Oregon*, 406 U.S. 404, 412, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972) (same). However, "Article 3, Section 31 of the Mississippi Constitution[11] has been interpreted to provide criminal defendants the right to a unanimous jury verdict of twelve impartial jurors." *Fulgham v. State*, 46 So. 3d 315, 324 (Miss. 2010) (citing *Markham v. State*, 209 Miss. 135, 137, 46 So. 2d 88, 89 (Miss. 1950)).

¶48.    This Court has declared that, "'[w]hen read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found.'" *Watkins v.*

---

[11] "The right of trial by jury shall remain inviolate, but the Legislature may, by enactment, provide that in all civil suits tried in the circuit and chancery court, nine or more jurors may agree on the verdict and return it as the verdict of the jury." Miss. Const. art. 3, § 31.

*State*, 101 So. 3d 628, 633 (Miss. 2012) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (Miss. 2012)). In the present case, the given jury instructions allowed the jury to find beyond a reasonable doubt that Baxter was guilty of capital murder if it found either that Baxter was a principal (i.e., Baxter was driving) *or* that Baxter was an aider and abettor to Brandy Williams (i.e., Baxter was directing and controlling Williams, who was driving).

¶49.   In *Fulgham*, Kristi Fulgham was convicted of capital murder of her husband, with the underlying offense being robbery. Though not alleged in the indictment, the State argued that the husband was robbed of his wallet and/or a central processing unit (CPU) it contended were taken from the marital home. Fulgham argued that the denial of an instruction requiring a unanimous jury finding of the specific property stolen "created a situation in which certain members of the jury could have found that Fulgham had robbed Joey of his wallet while other jurors could have found that she had taken the CPU." *Fulgham*, 46 So. 3d at 323. This Court held that the "personal property of another" element of the crime of robbery underlying the capital murder had been proven beyond a reasonable doubt, regardless of whether the jury decided Fulgham had stolen the wallet, the CPU, or both: "[b]y its verdict, twelve jurors unanimously agreed that Fulgham had robbed Joey of personal property." *Id.* at 323, 326. In that context, this Court rejected the argument that "acquittal would be required if six believed [Fulgham] had stolen [her husband's] money and the other six believed she had stolen the CPU." *Id.* at 326.

¶50.    The case at hand is readily distinguishable. In *Fulgham*, in order for the "personal property of another" element to be satisfied, a majority of this Court decided that it did not matter whether the jury found that Fulgham had stolen the wallet, the CPU, or both. Either way, she would have been guilty of the underlying offense of robbery. Here, it is of crucial importance whether Baxter was driving, which, if so, would support the State's theory that Baxter was the actual perpetrator in the capital murder, or whether Williams was driving and Baxter was directing her actions, supporting the State's alternative theory that Baxter aided and abetted Williams in the capital murder. The crime of capital murder of a peace officer and the crime of aiding and abetting are different crimes with separate elements and separate *mens rea* requirements.

¶51.    For the jury to find a defendant guilty of capital murder of a peace officer as a perpetrator, it must find, beyond a reasonable doubt, that the defendant committed "murder . . . perpetrated by killing a peace officer . . . while such officer . . . is acting in his official capacity, and with knowledge that the victim was a peace officer . . . ." Miss. Code Ann. § 97-3-19(2)(a) (Rev. 2014). "Murder," as defined by the statute, includes in pertinent part:

> (1) The killing of a human being without authority of law by any means or in any manner . . . in the following cases:
>
> . . .
>
> (b) [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual . . . .

26

Miss. Code Ann. § 97-3-19(1)(b) (Rev. 2014). Conversely, "'[a]ny person who is *present at the commission* of a criminal offense and *aids, counsels, or encourages* another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender.'" ***Graham v. State***, 120 So. 3d 382, 389 (Miss. 2013), *reh'g denied* (Sept. 12, 2013) (quoting ***Swinford v. State***, 653 So. 2d 912, 915 (Miss. 1995)) (emphasis added). The State must prove that the defendant, "although not [a] direct perpetrator[] of a crime, [was] yet present at its commission, doing *some act to render aid* to the actual perpetrator." ***Id.*** (quoting ***Smith v. State***, 237 Miss. 498, 115 So. 2d 318, 322 (1959)) (emphasis added).

¶52.   A conviction of capital murder of a peace officer as an actual or direct perpetrator requires a finding, beyond a reasonable doubt, that the defendant killed a peace officer while the peace officer was acting in his official capacity, that the defendant knew that the victim was a peace officer, and that the defendant killed the peace officer during the commission of an act eminently dangerous to others and evincing a depraved heart. For the jury to find that the defendant was guilty of the capital murder of a peace officer as an aider and abettor would require a finding, beyond a reasonable doubt, that the defendant aided, counseled, or encouraged another in the commission of such capital murder and that the defendant was present at the crime's commission.

¶53.   In ***Schad v. Arizona***, the United States Supreme Court considered "whether a first-degree murder conviction under jury instructions that did not require agreement on whether the defendant was guilty of premeditated murder or felony murder is unconstitutional . . . ."

27

***Schad v. Arizona***, 501 U.S. 624, 627, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (plurality opinion). The Court noted that, under Arizona law, "the attempt to commit a robbery is 'the legal equivalent of . . . deliberation, premeditation, and design.'" ***Id.*** (quoting ***State v. Serna***, 211 P.2d 455, 459 (Ariz. 1949)). Stated differently, "neither premeditation nor the commission of a felony is formally an independent element of first-degree murder; they are treated as mere means of satisfying a *mens rea* element of high culpability." ***Schad***, 501 U.S. at 639. The Court ultimately affirmed Schad's conviction, holding that the Constitution was not offended by the jury's having been instructed on both premeditated murder and felony murder to support its verdict of guilty of first-degree murder:

> We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the *preliminary factual issues which underlie the verdict*." ***McKoy v. North Carolina***, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236-1237, 108 L. Ed. 2d 369 (1990) (Blackmun, J., concurring) (footnotes omitted).

***Id.*** at 631-32 (emphasis added). In the present case, at issue are separate courses of criminal conduct, each requiring proof beyond a reasonable doubt of separate and distinct elements, and not merely "preliminary factual issues which underlie the verdict."

¶54.    Justice White dissented, joined by Justices Marshall, Blackmun, and Stevens. The dissent posited that, while premeditated murder and felony murder "both lead to a conviction for first-degree murder" under Arizona law, "they do so by divergent routes possessing no

28

elements in common except the fact of a murder." ***Schad***, 501 U.S. at 653 (White, J., dissenting). "Unlike premeditated murder, felony murder does not require that the defendant commit the killing or even intend to kill, so long as the defendant is involved in the underlying felony." ***Id.*** at 654. Conversely, "felony murder—but not premeditated murder—requires proof that the defendant had the requisite intent to commit and did commit the underlying felony." ***Id.*** Justice White continued:

> Consequently, a verdict that simply pronounces a defendant "guilty of first-degree murder" provides no clues as to whether the jury agrees that the three elements of premeditated murder or the two elements of felony murder have been proved beyond a reasonable doubt. Instead, *it is entirely possible that half of the jury believed the defendant was guilty of premeditated murder and not guilty of felony murder/robbery, while half believed exactly the reverse*. To put the matter another way, the plurality affirms this conviction without knowing that even a single element of either of the ways for proving first-degree murder, except the fact of a killing, has been found by a majority of the jury, let alone found unanimously by the jury as required by Arizona law. A defendant charged with first-degree murder is at least entitled to a verdict—something petitioner did not get in this case as long as the possibility exists that no more than six jurors voted for any one element of first-degree murder, except the fact of a killing.

***Id.*** (emphasis added).

¶55.    My thinking regarding the present case is more in line with that of Justice White's dissent in ***Schad***, though that position is but a persuasive one.[12] Here, we are faced with a

---

[12]And, indeed, ***Schad*** was a plurality opinion. Justice Scalia, who would have been the fifth vote in the Court's majority, wrote an opinion concurring in part and concurring in the judgment in which he wrote that "the plurality provides no satisfactory explanation of why (apart from the endorsement of history) it is permissible to combine in one count killing in the course of robbery and killing by premeditation. The only point it makes is that the depravity of mind required for the two may be considered morally equivalent." ***Schad***, 501

29

verdict[13] which "provides no clues as to whether the jury agree[d]" that the elements of capital murder of a peace officer as a principal were met beyond a reasonable doubt. *Id.* Nor can we glean with any certainty whether the jury instead fixed itself upon a finding of the State's alternative argument, that Baxter was not driving but that he was *present at the commission* of Williams's capital murder of Sheriff Welford and that he acted to render aid to her commission of that crime. And while an aider and abettor is, under our law, a principal, it is possible that half of the jury believed Baxter was guilty as a principal (i.e., he was the driver) in the capital murder of Sheriff Welford and not guilty as an aider and abettor of Williams's crime, while the other half believed exactly the reverse.[14] In such a scenario, half the jury would have believed that Baxter had been driving and directly committed the capital murder of Sheriff Welford, and half the jury would have believed that Baxter aided and abetted Williams's commission of the crime. Thus it is not certain upon which course of criminal conduct the jury settled, and, therefore, the unanimity of the jury was not established and remains in doubt. Neither the trial court nor this Court can tell whether each element of the crime was found beyond a reasonable doubt. This constitutes reversible error,

---

U.S. at 651 (Scalia, J., concurring in part and concurring in the judgment).

[13]"WE, THE JURY, FIND THE DEFENDANT, CHRISTOPHER LEE BAXTER, GUILTY OF CAPITAL MURDER."

[14]It also is possible that some other numerical division, totaling twelve, occurred, and neither can we rule out the possibility of a 12-0 verdict on one or the other of the State's theories of guilt.

30

as the defendant is entitled to a unanimous verdict whereby all twelve jurors agree upon the same thing.

¶56.    Analogously, the United States Supreme Court considered "whether a jury has to agree unanimously about which specific violations make up the 'continuing series of violations'" for the purpose of finding that the defendant was engaged in a "continuing criminal enterprise," as defined by 21 U.S.C. § 848(c). *Richardson v. United States*, 526 U.S. 813, 815, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). According to the Supreme Court, the federal statute "requires jury unanimity in respect to each individual 'violation.'" *Id.* at 824. More specifically:

> If the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed.

*Id.* at 818. The Court continued:

> The question before us arises because a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime. *Schad v. Arizona*, 501 U.S. 624, 631-632, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (plurality opinion); *Andersen v. United States*, 170 U.S. 481, 499-501, 18 S. Ct. 689, 42 L. Ed. 1116 (1898). Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force. *See McKoy v. North*

31

*Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990) (Blackmun, J., concurring).

*Richardson*, 526 U.S. at 817. Thus, at least under federal law, the means of commission of a particular criminal offense does not matter for purposes of unanimity, so long as the means allows the jury to find a single, necessary element. But where the jury must find separate, individual elements in support of a larger criminal offense, the jury must concur unanimously. *Id.* at 818. Here, separate courses of criminal conduct, each requiring proof beyond a reasonable doubt of separate and distinct elements, seem to me to require a unanimous finding by the jury either that Baxter was guilty of capital murder of a peace officer for having driven the car which struck and killed Sheriff Welford or that Baxter was guilty of capital murder of a peace officer for having aided and abetted the capital murder of a peace officer perpetrated by Williams.

¶57.    In the present case, we do not know whether the jury settled on finding Baxter guilty of capital murder of a peace officer as the actual, direct perpetrator as the driver of the vehicle which struck and killed Sheriff Welford, or as an aider and abettor, having encouraged Williams so to do. It cannot be said that the jury unanimously found Baxter guilty beyond a reasonable doubt on each and every element of the crime. I would, therefore, reverse both the Court of Appeals' judgment and the trial court's conviction and sentence and remand this case to the Circuit Court of George County for a new trial.

**KING, J., JOINS THIS OPINION.**